## JOHN WORTHINGTON *vs.* SARAH C. WORTHINGTON, EXECUTRIX, ET AL.

*Competency of Witness When Other Party to Transaction is Dead—Exception to Testimony in Equity Too General—Claim Against Estate of Decedent—Insufficient Evidence.*

Under Code, Art. 35, sec. 3, in an action by or against executors or distributees of a decedent, no party to the cause is competent to testify as to any transaction had with the decedent unless called by the other party. In an equity suit against an executor and devisees, where much evidence was taken, the plaintiff excepted to so much of the testimony of four named witnesses "as purports to give transactions alleged to have been had with and statements made by" the deceased. *Held,* that this exception is too general, since these witnesses were competent to testify as to some matters, and the exception does not designate the particular questions and answers alleged to be inadmissible. The Court cannot be required by such an exception to examine the whole testimony

and pick out such questions and answers as are objectionable, because the witness was incompetent to testify as to that particular matter.

When a party to a cause is incompetent to testify as a witness to transactions had with a decedent, that part of his testimony which leads up to, or is in explanation of, his testimony as to such transaction, is likewise inadmissible.

The bill in this case filed by the daughter and son-in-law of a testatrix against her executor and devisees alleged that the decedent was indebted to the plaintiffs on account of services rendered and farm products furnished during a period of more than thirty years before her death. The account consisted of entries made in lead pencil, partly on the fly leaves of an old book, all in the handwriting of the daughter, and all apparently with the same ·pencil or precisely the same kind of pencil, during the whole thirty years. There was nothing to show that the claimants had made any effort to collect the debt until after the death of the testatrix and after the death of her surviving husband. After most of the alleged indebtedness had been incurred many transactions took place between the parties; the testatrix had conveyed a farm to her daughter and had given money to her daughter's children, and by her will had devised property to them. *Held,* that the evidence fails to establish the validity of this claim, and that the bill seeking its enforcement against the real estate of the decedent should be dismissed.

*Decided January 12th, 1910.*

Appeal from the Circuit Court for Harford County (VAN BIBBER, J.).

The cause was argued before BOYD, C. J., PEARCE. SCHMUCKER, BURKE, THOMAS and PATTISON, JJ.

*J. J. Archer* and *A. F. Brown,* for the appellant.

*John S. Young* and *Thos. H. Robinson* (with whom were
*P. L. Hopper* and *Jos. W. Chamberlain* on the brief), for the
appellee.

PATTISON, J., delivered the opinion of the Court.

The appeal in this case is from the decree of the Circuit
Court of Harford County, in equity, dismissing the bill as
to the appellant and disallowing his claim.

This suit was instituted by the appellant, John Worthing-
ton, and his daughter, Blanche W. Ely, against the executrix
and devisees of Sarah H. Slymer, deceased, asking for the
sale of the real estate of the said Sarah H. Slymer for the
payment of her debts, on account of the insufficiency of the
personal estate of the said deceased.     The bill states that
Sarah H. Slymer was, in her lifetime, indebted unto the ap-
pellant and Sarah C. Worthington, his wife, upon an open
account, to the amount of $3,504.45, including interest; that
after the death of the said Sarah H. Slymer all the right and
interest of the said Sarah C. Worthington in and to said
claim was assigned unto her husband, John Worthington.
And that the said deceased was, also, indebted unto the said
Blanche W. Ely in the sum of $132.00, upon an open ac-
count, for nursing said deceased, and care of her house, etc.,
with interest thereon from the first day of October, 1902.
That the said Sarah H. Slymer departed this life on or about
the first day of October, 1902, seized and possessed of real
and personal estate in the city of Havre de Grace, Harford
County, Maryland, which, by her will, she devised as follows:
one house and lot of land she devised unto her husband.
Andrew F. Slymer, in lieu of his curtesy in her estate, which
Andrew F. Slymer, after her death, conveyed to the defend-
ant Mary A. Mitchell, wife of Robert O. Mitchell, subject to
a mortgage to the Columbian Building Association of Har-
ford County, for six hundred dollars, and to the payment to
Joseph Hankeln of two hundred dollars; another lot of land
she devised to her granddaughter Blanche W. Ely, wife of
Clinton C. Ely, in fee simple; another lot of land she devised

to her granddaughter Margaret A. Botts, wife of Archer M. Botts, for life and at her death to her children then living, and providing if she should die without leaving issue, then to the defendant, Sarah C. Worthington in fee; and after a small bequest to Caroline or Goldie Taylor, she devised and bequeathed all the rest and residue of her estate, real and personal, unto her said daughter, Sarah C. Worthington, and appointed her executrix. The bill then states that the personal estate was of small value and insufficient to pay the debts of the deceased, and that the plaintiff and the other creditors were entitled to have their claims paid out of the real estate, and prays that it be sold for that purpose.

Joseph Hankeln, a non-resident defendant, failed to appear and answer said bill and a decree *pro confesso* was obtained against him. All the other defendants appeared and answered.

The answers of the Columbian Building Association of Harford County and Mary A. Mitchell and Robert O. Mitchell, her husband, after denying the indebtedness of the deceased to the plaintiffs or either of them, allege that the claim of John Worthington upon which he bases his complaint, is the claim of Sarah C. Worthington who assigned it to him. That the decedent in her lifetime conveyed and assigned unto Sarah C. Worthington real and personal property of great value, which was intended by her as a gift to her daughter and was to be a complete acquittance of all claim which her said daughter might make against her or her estate. And that subsequent to the death of the deceased, Andrew (Anthony) F. Slymer conveyed unto Mary A. Mitchell the property so devised to him, subject to the mortgage of the Columbian Building Association, as alleged in the bill. The answers further allege that the property so devised unto Andrew F. Slymer, although standing in the name of Sarah H. Slymer, never in fact belonged to her, but was the property of her husband, Andrew F. Slymer; that it was purchased and paid for by him but at his request was conveyed to her; that the devise so made to him was in recognition of the facts above

stated and was intended to perfect his title to said property; that after the death of Sarah H. Slymer, Andrew F. Slymer expressed himself dissatisfied with the terms of her will and made known his intention to renounce it, but he was dissuaded from such course by Sarah C. Worthington, and in consideration therefor he was paid by Sarah C. Worthington, acting for herself and the other devisees, a large sum of money; that during these negotiations neither Sarah C. Worthington nor Blanche W. Ely ever revealed to him that they, or either of them, held secret claims against the estate of his wife, and that had he known of such claim he would not have accepted the settlement; that in consequence of their deceitful action the plaintiffs are estopped from setting up any claim that would diminish his interest in the estate. The answer pleads limitation and denies the insufficiency of the personal estate of the decedent to pay and discharge all her just debts due and owing at the time of her death.

The answer of Margaret A. Botts and Archer M. Botts, her husband, also denies all indebtedness of the decedent to the plaintiffs or either of them, and alleges that the testatrix, Sarah H. Slymer, never knew of the existence of the alleged claim or that she was being charged with the same during her lifetime. The answer further alleges that on the fifth day of August, 1872, at a time when the claim of Sarah C. Worthington and husband amounted to more than four hundred dollars, the decedent, in consideration of natural love and affection, conveyed to Sarah C. Worthington a valuable farm containing eighty acres of land. The answer further alleges that Sarah C. Worthington, as residuary legatee, took real and personal property amounting in value to at least three thousand dollars; and that the only debts filed against the estate, except the claims of the plaintiffs, were two small ones, amouting in the aggregate to $40.73. The answer further alleges that on the 22nd day of April, 1901, the testatrix assigned to the said Sarah C. Worthington a mortgage for five hundred dollars, and that on the 20th day of August, 1902, a short while before the death of the testatrix, she as-

signed a mortgage for two thousand dollars unto her three grandsons, William Nelson, John Parker, and George Mitchell Worthington, sons of Sarah C. Worthington. The answer also pleads limitation.

To sustain the issues joined, a number of witnesses were examined and a vast deal of testimony taken, the same covering over four hundred pages of the printed record.

Both the plaintiff and defendant filed exceptions to the admission of much of the testimony taken. Upon the submission of the case to the Court below, it allowed a portion of the claim of Blanche W. Ely, but dismissed the bill as to the plaintiff John Worthington and disallowed his claim. From this order or decree the appellant appealed to this Court. We will first consider and dispose of the exceptions.

The plaintiff excepted "to so much of the testimony of the (defendants) witnesses, Robert O. Mitchell, Archer M. Botts, Mrs. Margaret Botts and Mrs. Mary A. Mitchell, as purports to give transactions alleged to have been had with, and statements made by Sarah H. Slymer, deceased, whose executor, Sarah C. Worthington, is a party defendant to this suit, because the said Robert, Archer, Margaret and Mary are each parties defendants in said suit." The Court below held that this exception was too general and overruled it.

Sec. 3 of Art. 35 of the Code provides: "In actions or proceedings by or against executors, administrators, heirs devisees, legatees or distributees of a decedent as such, in which judgments or decrees may be rendered for or against them, and in proceedings by or against persons incompetent to testify by reason of mental disability, no party to the cause shall be allowed to testify *as to any transaction had with, or statement made by the testator, intestate, ancestor or party so incompetent to testify,* either personally or through an agent since dead, lunatic or insane, unless called to testify by the opposite party." This statute does not make parties to a cause incompetent to testify as to all matters, but only to such matters as are prohibited by it. This Court in the case of *Smith* v. *Humphreys,* 104 Md. 289, in reference to this sec-

tion of the Code, said: "The appellees are therefore in error when they said in their brief that the Act of 1904 restored the provisions omitted from the Act of 1902, and as they excepted to 'all the testimony' of Mrs. Smith 'on the ground of her incompetency to testify as a witness in this case,' such exception could not be sustained, if she testified to anything that the statute does not prohibit, because it is too general. Under such an exception the Court is not required, and it cannot be expected, to go through the testimony and pick out such questions as are objectionable because the witness is incompetent to speak of the subject referred to; * * * that the defendants should have excepted to designated questions and answers, on the ground of the incompetency of the witness, if they desired the exceptions to be passed on by the Court below, or by this Court, and not having done so, they cannot be excluded under that general exception to her incompetency as a witness."

While this exception does not go to all the testimony of the witnesses on the ground of their incompetency to testify, yet it, in general terms, excepts to so much of the testimony as purports to give transactions alleged to have been had with and statements made by Sarah H. Slymer, deceased, whose executrix is a party defendant, thereby imposing upon the Court the task of going through the testimony and picking out such questions as are objectionable, because of the reason stated. Much of the testimony of these witnesses is in relation to matters about which they are perfectly competent to testify. The plaintiffs should have excepted to designated questions and answers, if they desired the exception to be passed upon by the Court below or by this Court, and not having done so the exception was properly overruled.

The defendants first excepted to all of the testimony of each of the plaintiffs, John Worthington and Blanche W. Ely, on the ground of their incompetency as witnesses, and then excepted to such testimony specifically, each question and answer objected to being designated. The Court below

sustained this exception and excluded the whole of their testimony.

This testimony we have carefully examined and find that every part of it, as is expressed by the lower Court, "is either leading up to or in explanation of the testimony given by them where they are unquestionably incompetent to testify," and therefore no part thereof was admissible. Consequently the Court below committed no error in excluding this testimony. This disposes of the exceptions that are before us.

After a careful consideration of this case, we have reached the conclusion that the claim of the plaintiff should not be allowed him. We find many facts and circumstances in connection therewith that necessarily lead us to this conclusion. This claim, which was originally the property of John Worthington and Sarah C. Worthington, his wife, son-in-law and daughter of Sarah H. Slymer, who departed this life October 1st, 1902, had its origin so early as the year 1871, the first item of charge in this account being dated April 20th of said year. We find the account was entered in lead pencil upon the fly leaf of an old volume of Gummere's Surveying. As shown by this book, numerous items were charged in said account, starting with the said 20th day of April, 1871, and ending September 21st, 1887, and included charges for board, mending clothes, and for farm products of all kinds said to have been furnished to the said Sarah H. Slymer. It seems that the account after September 21st, 1887, was kept in a small account book, in which other written memoranda are found. The account itself starts in the middle of the book, the first item therein being October 28, 1887, and the last item of charge October 28, 1901. The account therefore covers a period of more than thirty years. All the items in the first book are in lead pencil, and while the writing is lightly shaded and in some respects difficult to read, nevertheless it has a freshness that could hardly be expected to exist after a lapse of more than thirty years. These charges, as stated, were made upon the dates of their alleged entries, and yet, in the case of most of them, they appear to have the

same shading and we might say to have been written with the
same pencil, or at least with a pencil of the same softness,
and yet it is hardly possible that the same pencil or a pencil
of like softness was used during this long period of time. All
the items of charges in these books are in the handwriting of
Mrs. Worthington, as testified to by her, and yet, as shown
by her testimony and the testimony of the family, she, during
the period covered by this account, was sick for long intervals
of time and for weeks would be confined to her bed. Never-
theless, the items at all times are entered in her handwriting.

Mr. and Mrs. Worthington were married in February,
1871, and this account was opened in April following. On
the fifth day of August, 1872, at a time when this account
amounted to more than four hundred dollars, Mrs. Slymer,
then Mrs. Nelson, in consideration of natural love and affec-
tion, conveyed to her daughter a farm, subject to the payment
of one-half of a mortgage of one thousand dollars resting
thereon, which farm was, a few years thereafter, sold by Mrs.
Worthington for thirteen hundred dollars. Mrs. Worthing-
ton, in her testimony, states that her mother had full knowl-
edge of the existence of this claim at that time and, in fact,
had previously suggested to her to open the account and in-
structed her as to the manner in which it should be kept. At
that time, however, no reference whatever was made to the
existence of this claim, it was absolutely ignored. Later, on
the 20th day of August, 1902, when the whole of this indebt-
edness, as alleged, had been incurred by her, Sarah H. Sly-
mer, with the full knowledge of her daughter, assigned unto
William Nelson, George Mitchell and John Parker Worth-
ington, her grandsons, sons of Mrs. Worthington, a mort-
gage held by her upon the lands of Price Hoopes, in Harford
County, upon which mortgage there was owing at that time
the sum of two thousand dollars. This, as shown by the
uncontradicted testimony in the case, was a gift on her part
to her grandsons. This gift was made by her at a time when
we are told by Mrs. Worthington that her mother was claim-
ing to her that she had no money with which to make a pay-

ment on this indebtedness. In the disposition of her property under her will, there is no allusion whatever made to this indebtedness, nor is there anything in the will at all consistent with the fact that she had any knowledge of the existence of said indebtedness. She devised specific real estate to the different persons therein mentioned, and concludes with devising all the rest and residue of her estate to her daughter, Mrs. Worthington, without making any provision at all for the payment of this indebtedness, which, if paid, would have consumed about one-half of her estate, and yet Mrs. Worthington would have us believe that her mother, Mrs. Slymer, had full knowledge of this indebtedness.

By the will of Mrs. Slymer, Mrs. Worthington was appointed executrix. Shortly after the death of her mother in 1902, letters testamentary were issued to her and she proceeded with the settlement of the estate. Mr. Slymer, husband of the decedent, not being satisfied with the terms of the will, was disposed to renounce it. Mrs. Worthington learning of this fact, went to her daughters, Mrs. Ely and Mrs. Botts, devisees under the will of Mrs. Slymer, and suggested to them that arrangement be made to pay unto Mr. Slymer an amount, three hundred and twenty-five dollars, which he had agreed to accept in consideration that he would not renounce the will, and suggested to them that they jointly raise and pay over to him this sum of money and that it be apportioned among them according to the value of the property so devised unto them, in order that their property would not be subjected to sale for the payment of that alleged indebtedness. This was done, Mrs. Botts paying, as her part, the sum of one hundred and thirty-nine dollars. At this time Mrs. Botts, as alleged by her, had no knowledge whatever of the alleged claim of the plaintiff in this case, and from this act of hers we are convinced of the truthfulness of this statement, as we cannot imagine that a person of any business intelligence whatever would have contributed one hundred and thirty-nine dolars to the payment of an indebtedness of three hundred and twenty-five dollars in order to save her

property when she had knowledge that there still existed an indebtedness of three thousand dollars for which her property would likewise have been subjected to sale.

On June 30th, 1903, after the settlement with Mr. Slymer, and after his death, and not until then, this claim was filed against the estate. In the meantime, Mrs. Worthington, the executrix, had assigned all her interest in it to her husband, the consideration therefor being,- as disclosed by the testimony, the conveyance by him of all his right, title and interest, as husband, in and to the farm owned by his wife upon which they then resided. The avowed purpose of such an assignment, as we are told by Mrs. Worthington, was for the collection of the claim, she saying that as "I was executor of mother's estate I could not collect it against her estate." Upon the assignment of the claim to her husband, he together with his daughter, Mrs. Ely, on the fifth day of August, 1903, filed the bill in this cause asking for the sale of the lands of which the decedent died seized and possessed, including those that were devised to Mrs. Botts, for the payment of her indebtedness, including the claims of the plaintiff. The testimony discloses that this was the first effort made to enforce the payment of this claim, the first items of which are said to have been entered or charged more than thirty-two years before, and the bill was filed, so far as the testimony discloses, without full information being imparted to Mrs. Botts of the existence of this claim.

Mrs. Worthington being called by the opposite party, was permitted by the Court below to testify. In commenting upon her testimony, we will simply say that it was clearly shown by it that it was her wish that this claim should be allowed. The conduct of Mrs. Worthington, as well as other facts to which we have not alluded, cast grave suspicions upon the correctness of the plaintiff's claim.

We think the Court committed no error in dismissing this bill and in refusing to allow plaintiff's claim. We therefore affirm the decree with costs to the appellee.

*Decree affirmed with costs.*