ANN ELIZABETH RUSSELL *vs.* NELLIE E. CARMAN ET AL.

*General Exception to Testimony in Equity—Deed Vacated Because Procured by Fraud.*

When a part of the testimony of a witness in an equity cause relates to transactions had with a deceased person and is incompetent, and a part of the testimony relates to other matters and is competent, a general exception to all of the testimony of the witness, or a motion to strike out all of it, without designating the particular portions objected to, is properly overruled.

Plaintiff alleged that she was induced to execute a deed by rea-
son of the false statement made to her by her niece that she
was witnessing her sister's will. The effect of the deed was to
reduce the interest of the plaintiff in certain real property
from a fee simple to a life estate. *Held,* that the allegations
of the bill are sustained by the evidence and that consequent-
ly the deed should be annulled and set aside.

*Decided November 18th, 1910.*

Appeal from the Circuit Court of Baltimore City (STOCK-
BRIDGE, J.).

The cause was argued before BOYD, C. J., PEARCE,
SCHMUCKER, BURKE, THOMAS, PATTISON and URNER, JJ.

*Robert P. Graham* (with whom was *J. Hooper Edmond-
son* on the brief), for the appellant.

*Julius H. Wyman* (with whom was *John L. V. Murphy*
on the brief), for the appellee.

PEARCE, J., delivered the opinion of the Court.

The bill in this case was filed by the appellant, Ann Eliza-
beth Russell, praying that a deed executed by her, conveying
certain real estate to her sister, Maria Louise Russell, since
deceased, be set aside and annulled on the ground that its exe-
cution was procured by misrepresentation and fraud prac-
ticed upon her by her niece, Nellie E. Carman. The bill
alleges that the plaintiff and her said sister, Maria Louise
Russell, were on the date of the execution of said deed, Sep-
tember 25th, 1906, seised and possessed as joint tenants, and
not as tenants in common, of certain real estate and leasehold
property in Baltimore City, and that she was induced to
sign her name to a paper then presented to her by said Nel-
lie E. Carman, who assured her that said paper was the will
of her said sister, Maria Louise Russell, and that she had

no knowledge of the contents of the paper, or of its character until after the death of her said sister, in September, 1907.

The bill further alleges that on October 2nd, 1907, said Nellie E. Carman filed in the Orphans' Court of Baltimore City, a paper purporting to be the will of said Maria Louise Russell, which was admitted to probate, and in which said Maria Louise Russell devised and bequeathed all her estate to said Ann Elizabeth Russell for her life, and after her death, to the defendants, Wm. R. Magers, Fannie D. Magers, Ida A. McCrone and Nellie E. Carman, children of the deceased sister of the testatrix, whose name was Mary R. Magers, and by which will said Nellie E. Carman was appointed executrix without bond, and was authorized upon the death of Ann Elizabeth Russell to sell all said property and divide the proceeds among the parties last named above. The bill further alleged that said Maria Louise Russell was in bad health and of feeble mind, and that said deed and will would operate to deprive the plaintiff of the estate which she would take by survivorship on the death of her said sister in the property described in said deed, unless set aside for the fraud practiced in procuring its execution. A copy of said deed was filed as part of the bill, and it appears from the recitals of that deed that the property in question was conveyed to said Maria Louise Russell, Ann Elizabeth Russell, and Josephine A. Russell by two deeds from J. Hooper Edmondson, one dated January 16th, 1903, and one dated February 24th, 1903, duly recorded, and it appears in the evidence that Josephine died in 1904, and Maria Louise in 1907, leaving the plaintiff the sole surviving grantee under said deeds last mentioned.

Wm. R. Magers and Fannie D. Magers, two of the defendants, and also two of the four beneficiaries under the will of Maria Louise Russell, filed separate answers admitting the allegations that at the date of the execution of the deed of September 25th, 1906, Ann Elizabeth Russell and Maria Louise Russell were seised as joint tenants of the property in

question, and as to the allegation of fraud in procuring its execution, their answers stated that "from their information they believed the charges of fraud to be true."

Mrs. McCrone answered, alleging that she had no knowledge of the joint tenancy mentioned in the bill, and neither denied nor admitted it. She averred that she knew Maria Louise Russell collected and received all the rents of this property, during her life and that she never knew of any interest of Ann Elizabeth in said property. She disclaimed any knowledge of the execution of the deed of September 25th, 1906, but indignantly denied the imputation of fraud to Mrs. Carman.

Mrs. Carman answered, neither admitting nor denying the alleged joint tenancy, but denying that Maria Louise was of feeble mind, and averring that she was of sound and disposing mind when said will was executed, and at all times. She averred that she collected all the rents from said property and paid them over to Maria Louise as the owner of the property. She denied all fraud or misrepresentation as charged, and alleged that at the time said deed was executed, it was read and explained to Ann Elizabeth, who knew and understood its contents and purpose.

The testimony covers one hundred and thirty printed pages of the record and involves many contradictions. It is conceded by all the parties that the disputed property originally belonged to Henry Fowble, an uncle of Josephine, Maria Louise, and Ann Elizabeth, and that it was left by his will to Josephine, Maria Louise, and their brother George Russell, who has since died, and whose widow holds her dower in his share. It also is established by the admission of Mrs. Carman upon cross-examination, that about six weeks after the execution of the will of Maria Louise, on July 31st, 1906, Mrs. Carman found among the papers of Ann Elizabeth a deed of this property from Josephine and Maria Louise to one J. Hooper Edmondson, and also a deed or deeds from him reconveying this property to them, and she testifies that she

delivered these deeds at once to Ann Elizabeth and Mary Louise, both of whom declared they knew nothing up to that moment, of the existence of such papers, and that both of them declared their purpose *"to rectify it,"* and that the deed of September 25th, 1906, was executed by Ann Elizabeth for the purpose of conveying any interest she might then or thereafter have in the property, to Maria Louise.

Ann Elizabeth testified that before Josephine's death in 1904 Josephine had a deed made by which this property was to go on Josephine's death to Maria Louise, and on her death to go to Ann Elizabeth. After Josephine's death, Ann Elizabeth and Maria Louise lived with Mrs. Carman for a time, and during that period in 1906, she testified that Mrs. Carman took her to the office of some lawyer whom she did not know, and whose name she could not remember, to sign a paper which Mrs. Carman said was a will of Maria Louise; that the paper was not read by her, nor read or explained to her by anyone, and that she signed her name believing it to be her sister's will, though her sister had never said anything to her about a will. She said Mrs. Carman collected all the rents and paid them to Maria Louise during her life, and that since her death, she had only received about two months rent from Mrs. Carman, who said she was putting the rents in bank.

Miss Fannie Magers testified that on Thanksgiving Day, in November, 1906, Mrs. Carman visited her and her brother Wm. R. Magers at their residence in New York City, and that at that time Mrs. Carman said to her in her bedroom, "I have something to tell you: You know that will that Will drew up and Mr. Graham had made, it was no good, and I have had it changed, and I have had a will drawn, and I have been terribly worried over it, and I have come to explain it," and she said "if my Aunt Elizabeth got the money in her possession, she knew what she would do with it, and she didn't want it disposed of in that way, and she said she had it fixed." Miss Magers asked her if Aunt Elizabeth knew it, and she

said "she did not," and she said "she didn't want her to know it, that she would get excited over it." Miss Magers further testified that subsequent to the death of Maria Louise, she went to her funeral in Baltimore, and the evening of the funeral Mrs. Carman and Mrs. McCrone called her in the next room, and said Ann Elizabeth "would receive the money from the rents and she wouldn't know the difference," and Miss Magers replied the will would be read to her Aunt "and she would be rewarded some way;" and that Mrs. Carman and Mrs. McCrone told her not to say anything about the will. On cross-examination Miss Magers said her Aunts Maria Louise and Josephine told her that they had employed Mr. Graham to draw a deed, and that "it was all fixed, one for the other, and the longest liver would receive it all."

Wm. R. Magers testified that before the death of his Aunt Josephine he came on from New York, in 1903, "that Aunt Joe wanted her affairs fixed, and her whole mind was that whenever she or whoever died first to have some kind of document drawn so that it wouldn't get into Court; that he, with request, had Mr. Graham draw up the paper which was read and discussed to them, and which they signed and it was recorded; and that Aunt Joe was the head of the family, and attended to all the business."

He further testified that Mrs. Carman was at his house in New York on Thanksgiving Day, 1906, that she came into the library in the evening, and told him "that she had a paper drawn up and had Aunt Elizabeth to sign it, and that she had told Aunt Elizabeth it was Aunt Lou's will she wanted her to sign, * * * that she did not read it to her—it would just upset her and do no good; that she did not tell him anything about the contents of the paper, but asked him if he thought she had done right, and that he, knowing about the former documents that were drawn up, replied that he presumed it was all right."

He further testified that shortly after the death of Maria Louise he went to Baltimore, and Mrs. Carman told him

Aunt Maria had left a will, and asked him to open it, which he did and read it to Aunt Elizabeth, Miss Magers and Mrs. Carman; "that there were some hard things said on both sides, especially by Mrs. Carman, who said she had done it for the best," and that he knew nothing about the deed from Ann Elizabeth to Maria Louise, until after the will was read, and then he and Mr. Edmondson "went to the Courthouse to get our eyes opened and saw the document there; that Mrs. Carman said: "What difference will it make to Aunt Elizabeth, she will get her money as long as she lived anyway, and she thought she had done for the best in having the will made."

When the general question was read to Mr. Magers at the close of his examination he said: "I don't want to sign that yet; I want to look over some memoranda I made when the will was read;" and then, after refreshing his memory from those memoranda, he testified further: "On October 1st the will was read and Mrs. Carman said to all in the room—'It was none of your business if Louisa did make a will, and it was no use to tell you. I didn't read the paper to Aunt Elizabeth as she would not understand it'; that is her exact words that I copied."

Rev. Dr. Joel T. Rossiter, pastor of Maria Louise for over thirty years testified that Ann Elizabeth nursed her throughout several years of failing health; that she spoke to him about making her will before Mr. Magers went to New York; that she seemed worried that her sister had not shared in their uncle's will and that after Mr. Magers had moved to New York, she told him that he "had had a paper drawn up by which as they died, the estate should go to the living, and that whoever died last would get the remainder, and that this arrangement seemed to give her peace and satisfaction.

Miss Annie Troll, who had known all the parties all her life testified that Maria Louise told her after she moved to Mrs. Carman's "that the two sisters had arranged their affairs, and that their property was all to go to the longest liver.

Mrs. McCrone testified at considerable length principally about the mental characteristics and capacity of her aunts, but had no knowledge of the facts relating to the will and deed in question. It is proper to say that her testimony was marked by absolute fairness and impartiality, and evinced a high degree of intelligence. Mrs. Carman testified in chief that she went with Ann Elizabeth on September 25th, 1906, to the office of Mr. Orem, a notary public; "that her Aunt Elizabeth went of her own free will and the solicitation of her sister, Maria Louise, to deed back certain properties to Maria Louise so she could dispose of them as she saw fit. That she, herself, read the paper to her two aunts, and Ann Elizabeth read it herself, and that she signed it first on the wrong line, and then signed again."

She denied that she told Ann Elizabeth the paper was her sister's will. She said Ann Elizabeth selected Mr. Orem from a list of notaries, for the purpose of executing the deed and that she understood fully what she was doing. She admitted that she had an interview with her brother Wm. R. Magers, and her sister, Fannie Magers, on Thanksgiving Day, 1906, at New York, but she utterly denied that she had told either of them anything they stated occurred at those interviews, and that all she told them was that Maria Louise had made a will. On cross-examination she testified that Mr. Wyman drew the will from "a digest" which she took him from her Aunt Maria.

She said that when this will was executed her Aunt Maria knew nothing of the deed from them to Edmondson nor of his reconveyance to them, and that her Aunt Maria believed Ann Elizabeth had no interest in the property, and that she herself discovered the true situation and communicated it to her two aunts. Her account of this discovery and of what followed is singular to say the least.

She says: "I went up on the third floor for an article I needed and I found a paper; I opened it and saw it did not belong to me; it was in a bag of waste paper, old letters they

had torn up, and I took it straight down and gave it into the hands of Aunt Elizabeth. That paper was a deed. They told me so about *three o'clock the same afternoon. I went upstairs* and they *had read it.* They both said positively and emphatically that they did not know one thing about it, and asked me to explain it to them." A moment later she said, when asked what Ann Elizabeth did when the paper was handed her, "she read it aloud to her sister because her sister had no glasses strong enough to use. *At that time* I did not know who the deed was from. I went up there about three o'clock and then they told me about it * * *. It was a deed from Maria Louise and Josephine to a man by the name of Edmondson * * *. After I told her exactly what the thing meant, Maria Louise said she had never seen the paper and she would go herself to the Orphans' Court if Ann Elizabeth did not have it rectified, and Ann Elizabeth was very glad to have it rectified ***. Then I went to Mr. Wyman and he said Maria Louise insisted upon having her property in her own name, and Ann Elizabeth was perfectly willing to give back what did not belong to her." After giving this account of the one deed to Edmondson, on further cross-examination she said she found another deed from Edmondson reconveying the property to her two aunts, "that the two were altogether" but she nowhere says that she gave this deed to either of her aunts, or told them anything about it, and she said when speaking of the last mentioned deed, "that *both* papers were together *lying on the top of a box,"* though she had a moment before said the first mentioned deed was "in a bag of waste papers." She also said that *Ann Elizabeth* declared *"she* had never been anywhere to sign any paper and that no one had ever come to them;" but when reminded by the appellant's counsel that she had said the deed was from Josephine and Maria Louise only, to Edmondson (Ann Elizabeth up to that time having no interest in the property), she said *Ann Elizabeth* "declared that *Maria Louise* had never been anywhere to sign them, and there had never been anyone to the house to

sign them," but she did not say that *Maria Louise* denied she
had signed the deed to Edmondson. It is certain however, if
disinterested and unimpeached testimony is to be allowed
any weight whatever, that as a matter of fact Maria Louise
did know that she had signed the deed to Edmondson, and
that she fully understood the purpose of that deed and of the
reconveyance by him to herself and to Josephine and Ann
Elizabeth, since Dr. Rossiter testified that Maria Louise told
him that Mr. Magers had a paper drawn up, by which, as
they died, the estate should go to the living, and that who-
ever died last would get the remainder, and that this arrange-
ment gave her peace and satisfaction, and because Annie Troll
testified that Maria Louise told her that "the two sisters *had*
arranged their affairs; their property was all to go to the
longest liver." Ann Elizabeth testified that she knew this
had been done, as her sisters told her so, but there is no occa-
sion to dwell upon the testimony of an interested witness
when the fact is established by disinterested witnesses. Mrs.
Carman further testified that she went to see Mr. Wyman
"to have some instrument prepared that would remove that
trouble" and that he informed her "what would be necessary
to fix it," and that she reported to Maria Louise who told her
to have it done.

Miss Elizabeth A. Carman testified that she was in her
own room across the hall, the doors being open, and heard
her mother reading a deed to her two aunts describing the
situation of the property, and that her mother and her Aunt
Elizabeth went out, and that her aunt told her she was going
to a notary's office to execute a deed.

Wm. H. Carman, the husband of Mrs. Carman, testified
that Maria Louise told him they found these papers, and
Ann Elizabeth was going to have them transferred back to
her; and that both the aunts said these papers had never been
signed and that the papers were a fraud, and that Ann Eliza-
beth was going to a notary to have them fixed.

Mr. Orem, the Notary Public who attested the deed of Ann Elizabeth to Maria Louise of Sept. 25th, 1906, proved his signature and the execution of the deed by a woman presented as Ann Elizabeth Russell, whom he had never seen before or since, but he could not recall any circumstances attending its execution, and did not remember the deed being read to her.

There can be no serious question as to the law applicable to the facts of this case when these are determined, and we have set forth the evidence in detail in order that our conclusion as to the facts may be fully understood.

We will first dispose of the exception to the whole of the testimony of Ann Elizabeth Russell and the motion to strike out the same. It would be sufficient to say that the only exception to this testimony is found in the motion to strike out the whole of it, filed November 7th, 1909, after the testimony was closed on November 6th, 1909, and it nowhere appears in the record that the same was stricken out, or that the Court made any ruling thereon for review by this Court. But if the record showed that this motion had been granted we are of opinion that such ruling would have been error.

Under sec. 3 of Art. 35 of the Code, this witness was not wholly incompetent to testify, but was incompetent only "as to any transaction had with, or statement made by the testator, intestate, ancestor or party so incompetent to testify, unless called by the opposite party." *Such portions* of the testimony of this witness as related to conversations between herself and Maria Louise, or transactions with her *personally,* were of course open to objection, *properly taken,* but she testified to much not prohibited by the statute, and especially to the alleged false representation by Mrs. Carman that the paper which she signed before the notary was not a deed but her sister's will. That was not a transaction with her sister, but with Mrs. Carman, who was alive, and sane, and competent to testify as to the *transaction*. the alleged false representation, and did testify fully in relation thereto. Obviously,

therefore, the objection as made was too broad. *Brewer* v. *Bowersox,* 92 Md. 575. "The Court is not required, and cannot be expected to go through the testimony, and pick out such questions as are objectionable, because the witness is incompetent to speak of the subject referred to. * * * The defendants should have excepted to designated questions and answers, on the ground of the incompetency of the witness, if they desired the questions to be passed on by the Court below, or by this Court, and not having done so, they cannot be excluded under that general exception to her incompetency as a witness." *Smith* v. *Humphreys,* 104 Md. 289, and *Worthington* v. *Worthington,* 112 Md. 141.

It is true that a contract or conveyance ought never to be cancelled or set aside for alleged false representations unless their making and their falsity is clearly proved, and unless the complainant has been injured thereby. *Ranstead* v. *Allen,* 85 Md. 486. But when the Court is convinced by a careful examination of the testimony that such a representation has been made, to the injury of the complainant, the duty to annul the contract or set aside the conveyance is as clear and imperative as the duty to sustain it where the proof leaves the Court in doubt.

The important and controlling inquiry in this case is whether Mrs. Carman represented to Ann Elizabeth that the deed of September 25th, 1906, which she signed, was the will of Maria Louise, and thereby induced her to sign it If such representation was made it was necessarily false, and as the consequence of that deed, if sustained, must be to reduce Ann Elizabeth's conceded fee simple in the property described in that deed to a life estate, the resulting injury to her is established.

The case is therefore reduced to the simple inquiry whether that false representation was made.

Ann Elizabeth testifies it was made, and that she signed the deed, believing it to be her sister's will. Mrs. Carman testifies it was not made, and that Ann Elizabeth knew and

understood what she was signing.  The Notary's testimony
proves the execution of the paper, but throws no light upon
the alleged false representation.  Miss Elizabeth Carman
testifies her Aunt Ann Elizabeth told her she was going to
sign a deed, but did not say to whom or for what purpose.
The testimony of Mrs. Carman's husband, Wm. H. Carman,
is too vague to be important, and is inherently improbable
in view of the proof of the deliberate previous arrangement
of the three sisters, through the Edmondson deeds.  The de-
liberate preparation and execution of those papers was proved
by Wm. R. Magers, who procured it at their request, and
their subsequent existence *among the papers of Ann Eliza-
beth* was proved by Mrs. Carman herself.  She testified that
she took these papers to Ann Elizabeth at once, and both her
aunts declared they had never seen or heard of either paper,
and declared their purpose to have them annulled.  But three
witnesses, Fannie D. Magers, Annie Troll and Rev. Joel T.
Rossiter, swear positively that Maria Louise told them on
different occasions that Wm. R. Magers had these deeds pre-
pared at the request of Josephine and Maria, and that they
were executed accordingly, and that their purpose was to se-
cure the property to the longest liver; and Wm. R. Magers
testifies that he had these papers drawn at their request, and
that they were executed and recorded.  Such testimony from
four reputable witnesses, two of whom are without any inter-
est, and two of whom testify against their own interest, must
prevail over the testimony of one interested witness, and must
fatally discredit her testimony upon a vital point in the case.

The testimony of Ann Elizabeth that Mrs. Carman pro-
cured the execution of the deed of September 25th, 1906, by
representing that she was witnessing her sister's will, is con-
firmed by the testimony of Fannie Magers and Wm. R. Ma-
gers, before set out, both of whom swear positively that Mrs.
Carman told them on separate occasions that she told Ann
Elizabeth the paper she signed was Maria Louise's will;
that she didn't read it to her because it would upset her;

that she didn't want her to know anything about it, and she thought she had done it for the best of all. Already discredited, as we have shown, in her statements about the Edmondson papers, she is still further discredited by the testimony as to her acknowledgment of the alleged false statement that the paper signed by Ann Elizabeth was her sister's will, and it is impossible to resist the conviction that she did make the alleged false statement and thereby procured the execution of the deed of September 25th, 1906. We forbear any reference to the will of Maria Louise further than to say that it is much to be feared that its execution was part of the scheme to deprive Ann Elizabeth of this property, and that it was obtained by some improper means.

It results from what we have said that the deed of September 25th, 1906, must be annulled and set aside.

> *Decree reversed and cause remanded that a decree may be passed in conformity with this opinion. Costs above and below to be paid by the appellee, Nellie E. Carman.*