ORTEL, Executor *v.* GETTIG

[No. 142, October Term, 1954.]

596

*Decided July 14, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Edwin S. Panetti,* with whom was *W. LeRoy Ortel, pro se,* on the brief, for the appellant.

*Malcolm J. Coan,* with whom were *Anthony S. Federico* and *Frank J. Dolan* on the brief, for the appellee.

BRUNE, C. J., delivered the opinion of the Court.

The executor of the estate of Henry Gettig appeals from a decree in favor of Gettig's widow declaring a prenuptial agreement dated April 7, 1937, between Gettig and the appellee (then Cora A. M. Gebauer) to be null and void.

This agreement recited that it was intended that a marriage between the parties was "shortly to be solemnized"

and it provided for the mutual relinquishment of rights in each other's property, so that after the marriage each party might enjoy and dispose of his or her property by deed or will as if the marriage had not taken place. It further contained provisions by which the prospective wife relinquished all claims to alimony or counsel fees in case of separation or divorce, and also a mutual relinquishment of rights to administer upon each other's estates, unless named by will as executor.

Both parties had long been residents of the Highlandtown district of the City of Baltimore. Henry Gettig had an electrical store and contracting business on South Highland Avenue. He had been married previously and he and his first wife had one child, a son, William Irvin Gettig. The first Mrs. Gettig died in 1920, and the son continued to live with his father in a second floor apartment over the store until the son's marriage in 1927, when he went to live next door. The father continued to live in the same place as previously, and lived there alone until his marriage to the appellee in May, 1937. The appellee lived about two blocks away in a house on Bouldin Street which she had inherited from her mother.

The father and son continued to work together in the electrical business until 1949, when the father gave his interest in the business, but not in the buildings in which it was conducted, to the son. The trial court found that the business was a "most successful enterprise in 1937 and continued as such until 1949". There was, however, no testimony as to its value in either year, nor does it appear that the appellee interposed any objection to the gift made by the father to the son in 1949.

The questions presented on this appeal are divided into two groups—first, those pertaining to the admission of evidence relating to transactions between a party (the plaintiff) and the testator, and, second, those pertaining to disclosure or nondisclosure of the property owned by the testator at the time of the execution of the antenuptial agreement.

I. *Evidence—Transactions between the Plaintiff and the Testator.*

Code (1951), Article 35, Section 3 provides in part that "In actions or proceedings by or against executors, administrators, heirs, devisees, legatees or distributees of a decedent as such, in which judgments or decrees may be rendered for or against them, * * * no party to the cause shall be allowed to testify as to any transaction had with, or statement made by the testator * * * unless called to testify by the opposite party, * * * ".

The questions with regard to the admission of evidence are somewhat confused, partly, at least, because of the rather considerable amount of repetition in the testimony. We shall attempt to segregate by subjects the evidence which the appellant claims was improperly admitted and to deal with each of those subjects.

(a) *The Marriage.* The appellant objected to the appellee's testifying with regard to her marriage to the testator. This objection finds support in *Denison v. Denison,* 35 Md. 361, 381; *Redgrave v. Redgrave,* 38 Md. 93, 96; *Bowman v. Little,* 101 Md. 273, 295, 61 A. 223; and *Whitehurst v. Whitehurst,* 156 Md. 610, 145 A. 204. On the other hand, even while making this objection, the appellant conceded that he did not allege that the plaintiff was not married; and when the court called for the production of the marriage license and the plaintiff produced and identified her marriage license and certificate and they were offered and admitted in evidence, the appellant offered no further objection. Such documents were a proper means of proving the marriage. *Schroder v. State,* 206 Md. 261, 111 A. 2d 587. If there was any irregularity in their being identified by the plaintiff, we think it was waived. Furthermore, Irvin Gettig, the son of the testator and the principal beneficiary under the will, later gave testimony which fully recognized and acknowledged the marriage.

(b) *The Engagement.* The plaintiff testified, over timely objection, to the fact that she had been engaged to the testator prior to the execution of the ante-nuptial

agreement. We think that it was erroneous to admit her testimony to this fact, but we also think that the error was harmless. In the first place, the attorney who drew the ante-nuptial agreement testified that at the beginning of the conference at which the agreement was signed, Mr. Gettig "introduced me to his prospective wife" and that they got down to business "after the usual cordialities of such an occasion." In the second place, the agreement itself recites that "a marriage is intended shortly to be solemnized" between the parties. Both of these items give rise to a logical inference that the parties had already agreed to marry. However, even if they were not actually engaged until the agreement was signed, this would seem to be of no great importance under *Levy v. Sherman*, 185 Md. 63, 43 A. 2d 25, which is more fully referred to later in this opinion.

(c) *Execution of the Agreement.* The fact of execution of the ante-nuptial agreement was fully proved by the testimony of counsel who drew it and who was present when it was signed. Actually, as a result of the objections of the defendant, the plaintiff was restricted, so far as the execution of the document was concerned, to identifying her signature and having the document marked for identification. It was not put into evidence through her. It was testified about rather extensively by counsel who had drawn it, who was called as a witness by the defendant, and it was actually offered in evidence by the defendant himself.

(d) *Information with regard to the Testator's Financial Worth.* This subject came up first through a question by the court towards the end of the plaintiff's direct examination. She testified that at the time of the execution of the agreement, she did not know his financial worth. It was next brought up by the defendant on cross-examination of the plaintiff when the defendant was seeking to show her knowledge of the testator's business and of real estate apparently owned by him, and was again brought up at a later stage of cross-examination in an effort to show that the plaintiff did not make any inquiry

as to Mr. Gettig's worth because she already knew it. She consistently denied knowing his financial worth, and when the subject was brought up for the second time during her cross-examination she added "I had faith in the man I married to tell me those things" and that it was up to him to tell her. The defendant interposed no objection or motion to strike either of those answers.

When the plaintiff's counsel went into this same subject on redirect examination by inquiring whether any disclosure of Mr. Gettig's financial worth had been made to her, the defendant objected to the question because it did not state time. The court supplied this omission by relating it to the time of execution of the agreement or any time prior thereto and then overruled the objection. The defendant did not note an objection to the question as amended by the court nor did he move to strike the answer, which was "No, sir."

The appellant contends that he had objected sufficiently to any testimony by the plaintiff with regard to any transaction with or statement by the testator and that he was not required to keep reiterating objections, relying upon *Giering v. Sauer*, 120 Md. 295, 87 A. 774, a jury case which also involved Section 3 of Article 35 of the Code. There are, however, several cases in which it has been held that a general objection made under that same section to so much of the testimony as relates to transactions had with the decedent or to statements made by him is not sufficient. *Worthington v. Worthington*, 112 Md. 135, 76 A. 46; *Russell v. Carman*, 114 Md. 25, 78 A. 903; *O'Connor v. Estevez*, 182 Md. 541, 35 A. 2d 148. The difficulty pointed out in the latter cases of going through the testimony and picking out those portions of it subject to the general objection is present in this case; and we note that at one point, when the defendant's counsel stated that "We are making objections to all testimony with respect to transactions with the deceased, automatically," the court said "Not automatically. If you have a reason for objecting, you object."; and that the defendant's counsel replied, "Yes, sir."

In our view, under *Heil v. Zahn,* 187 Md. 603, 51 A. 2d 174, the testimony of the plaintiff elicited by the defendant on cross-examination was admissible. There does not seem to have been a timely objection to the first question along this general line, which was put by the court during the plaintiff's direct examination, if that question was open to objection. The defendant's specific objection to the testimony on redirect examination also, in terms, went to only one thing—time—and that objection was met.

However, in the view which we take of the requirements of disclosure, it is not necessary to decide whether either of the defendant's two last mentioned objections to testimony on this subject were well or sufficiently taken. See *Lednum v. Barnes,* 204 Md. 230, 103 A. 2d 865, where it was found unnecessary to determine whether a party was properly permitted to testify that he had not received notice of a matter from the decedent, because the burden rested upon the opposite party to prove that such notice had been given and there was no such proof. We may add that even if the above mentioned testimony elicited on cross-examination were excluded, the result of the case would be the same because of our views with regard to non-disclosure.

(e) *Statements by the Testator.* In addition to testimony as to the absence of statements by the testator, the plaintiff testified to some statements alleged to have been made by him. In some instances no objection was noted by the defendant; in others objections were noted, and in at least one instance, a motion to strike an answer containing such a statement was first overruled but later granted. The same questions and difficulties about making or repeating objections are present here as with regard to information about the testator's financial worth. Again because of our view on the requirement of disclosure we do not find it necessary to decide whether these objections were sufficient or not.

(f) *Effect of Presence of a Third Person.* The appellee seeks to sustain the admission of testimony by the plaintiff with regard to what was said at the conference at which

the ante-nuptial agreement was executed on the ground that the purpose of the pertinent evidence statute was not violated because of the presence of a third party, Mr. Gettig's counsel. She cites *Tillinghast v. Lamp,* 168 Md. 34, 41, 176 A. 629, in support of this contention. We do not, however, find that the statement in that case to the effect that the purpose of the statute is to eliminate, as far as possible, frauds upon the estates of deceased persons by barring the testimony of interested parties who could fabricate evidence without fear of contradiction by the decedents goes so far as to support the admission of the plaintiff's testimony as to transactions with, or statements by, the testator. The statute states no exception to the rule because of the presence of a third party, and nothing in *Tillinghast v. Lamp* suggests that such an exception can be implied. In *Evans v. Buchanan,* 183 Md. 463, 38 A. 2d 81, there were conversations between Miss Buchanan, one of the plaintiffs, Mr. Niner, the decedent, and Miss Campbell, a third party. There was also a subsequent conversation between these persons and a Mr. Downs, who was the other plaintiff. The agreement sought to be proven and enforced was made through those conversations between Mr. Niner on the one hand and Miss Buchanan and Mr. Downs on the other. In discussing the problem of proof, this Court said: "As Niner is now dead and Miss Buchanan is incompetent to testify as to any transactions with or statements made by him, because of the provisions of Section 3, Article 35, Code 1939, we have only the testimony of Miss Campbell as to this and subsequent conversations between Niner and Miss Buchanan." A somewhat similar situation existed in *Snyder v. Cearfoss,* 187 Md. 635, 51 A. 2d 264, in which the plaintiff herself was barred from testifying, but her son, who was present at a conference between a testator, whose executrix was a party to the case, and the two intestates of whose estates the plaintiff was administratrix, was a competent witness as to what was said at that conference. The presence of a third person who is com-

petent to testify as a witness does not remove the bar of the statute so as to permit a party to testify.

The general purpose of the evidence statute to equalize the position of the parties by imposing silence upon the survivor as to transactions with or statements by the decedent has been commented on repeatedly from as early as *Pairo v. Vickery,* 37 Md. 467, 488, to as recently as *Kenny v. Peregoy,* 196 Md. 630, 641, 78 A. 2d 173. Criticisms of the statute and others like it have been noted, but the statute is recognized as binding in the situations to which it applies. *O'Connor v. Estevez, supra.* It has been enforced in numerous cases, but it has not been extended beyond what its terms require. See *Weir v. Baker,* 181 Md. 249, 29 A. 2d 269, where no personal representative of a decedent husband was made a party after his death and the wife was permitted to testify with regard to the holding of property which had been levied upon on a judgment against the husband alone in a suit instituted by the husband and wife claiming that the seized property was owned by them as tenants by the entirety.

The appellee's brief states (in an obviously incomplete sentence) that "the evidence rule has never been held to prevent the introduction by the surviving spouse [* * *], where same had been made as in the present case in contemplation of marriage. This was done in the case of *Levy v. Sherman,* 185 Md. 63 and other cases of similar nature." The above brackets and asterisks indicate the point at which we suppose some words were omitted. We further assume that the supposedly omitted words would have been something like this: "of testimony relating to an agreement with the decedent spouse." If so, the statement is erroneous at least so far as *Levy v. Sherman* is concerned. A short examination of the briefs shows that the evidence statute was applied (with one exception in the trial court mentioned below) and that the plaintiff was not permitted to testify with regard to the making and execution of the contract, and the ap-

pellee's brief asserts that as a result, the case was devoid of any testimony with regard thereto.

The one exception was that the plaintiff was permitted to testify, over objection, to having been engaged to the decedent at a time shortly before the execution of the contract. The inadmissibility of this evidence under Section 3 of Article 35 of the Code was strongly urged in the appellee's brief.

The opinion of this Court did not rule on this objection made by the appellee. The views expressed as to the unimportance of whether the parties became engaged just before or just after the execution of the ante-nuptial agreement made a ruling on this point unnecessary. (We shall revert to this later.) A careful reading of the opinion will show that it sets out a number of allegations of the bill with regard to the execution of the agreement which, we may assume, the plaintiff would have supported by testimony if she had been permitted to do so. In stating the facts upon which the Court based its conclusions those matters were omitted, and the Court expressly stated (185 Md. 63, 78, 43 A. 2d 25) : "Without giving consideration to any of the evidence of the appellant concerning transactions she had with Levy regarding this agreement, the testimony offered in the case by appellees did not meet the burden of proof which the law casts on them."

We have no knowledge of what "other cases" are referred to by the appellee along with *Levy v. Sherman.* The only other comparatively recent case in this Court involving an ante-nuptial agreement which has come to our attention is *Wlodarek v. Wlodarek,* 167 Md. 556, 175 A. 455. That case came up on rulings on demurrers and therefore could not have required consideration of the evidence statute at that stage of the case.

(g) *Plaintiff's Care of the Testator.* There was some testimony by the plaintiff to the effect that the testator was ill for several years prior to his death and that she took care of him during his illness. This testimony was

inadmissible *(Giering v. Sauer, supra)* and it was duly objected to. We shall not consider it.

*Summary.* The statute barring the testimony of a party to transactions with, or statements by, the testator was clearly applicable to the plaintiff's testimony relating to such subjects in this case.

Any objection to proof of the marriage through the plaintiff's producing, identifying and putting in evidence documentary proof thereof was waived. In addition, the fact of marriage was also shown by testimony produced by the defendant.

Without deciding whether or not the defendant's objections were sufficiently taken to the plaintiff's testimony relating to the execution of the agreement or to statements actually made by the testator or to her testimony on direct or redirect examination relating to her knowledge (or lack of knowledge) of his worth, we shall consider the case on the merits without taking such testimony into account.

Her testimony with regard to taking care of the testator was inadmissible, was duly objected to and will be disregarded by us. We shall also disregard her testimony as to the engagement.

We consider her testimony given on cross-examination with regard to her lack of knowledge of the testator's worth and his failure to inform her of it as properly before us because it was elicited by the defendant and no timely motion was made to exclude it as unresponsive, or otherwise. Its exclusion would not, however, alter the result of the case.

*II. Non-Disclosure of Husband's Financial Worth.*

It is clear that at the time of the execution of the antenuptial agreement no disclosure of the net worth of the parties was made, and that there was no discussion of the matter. Counsel for Mr. Gettig on that occasion did not know what Mr. Gettig's worth was and therefore could not have disclosed it. His testimony proves the non-disclosure of financial worth at that time and also establishes the fact that the prospective Mrs. Gettig had no

independent legal advice, and that no suggestion was made at that time that she should seek such advice.

The testimony of another lawyer who was one of Mr. Gettig's several counsel shows that Mr. Gettig had discussed with him rather extensively the matter of an antenuptial agreement, and he says that one such discussion took place in the presence of Miss Gebauer (now Mrs. Gettig). (She denies having ever met or seen this lawyer prior to the trial.) On the basis of his testimony, it seems that Mr. Gettig got a good deal of free legal advice and then employed another lawyer (who had also represented him previously) to draw the agreement.

Counsel who did prepare the agreement testified that he drafted it about two months before it was executed, that he went over it with Mr. Gettig just after it had been prepared and that it was in accord with Mr. Gettig's instructions. There is no proof that Mrs. Gettig ever saw it before the evening when it was executed.

The Chancellor found that at the time of the signing of the agreement Mr. Gettig's assets amounted to approximately $75,000, exclusive of his electrical business (which the Chancellor thought very valuable), and that the assets of the prospective wife were worth about $10,000.

The Chancellor found specifically, among other things, that Cora Gebauer (now Mrs. Gettig) was not advised as to the full legal effect of the agreement, that she was not informed and did not know at the time of its execution of the value of the estate of her prospective husband and that there was a great disparity between the values of the estates of the prospective husband and wife. We think that there was sufficient testimony properly admissible before the Chancellor to warrant his findings on all of these matters. The attorney who drew the agreement, and who undertook to explain it at the time of its execution, testified that "I told both of them that the present subject agreement was each one would hold independently of the other their respective properties after they signed that agreement and after they were

married." The court inquired "That was the extent of your explanation to them?" The reply was "Yes, sir." It may be noted that the agreement provides that either party might dispose of his or her property by deed or will, but that it does not contain a clause which by direct and express terms waives all rights which either party might have as a surviving spouse in the estate by way of dower, "thirds" or any other legal share. That is, of course, a consequence of consenting to the disposition of the other's property by will, if the other makes a will, and Henry Gettig did so. (Just what effect the agreement would have had if he had died intestate might present a different question, but that is not before us. Cf. *Hewitt v. Shipley,* 169 Md. 221, 181 A. 345.) The plaintiff was not a person of large affairs or business experience—she had worked for about thirty-five dollars a week as a "forelady, designer and pattern maker" and had worked at that trade for twenty-two years. She denied knowing the effect of the agreement and we think that the explanation above set forth was not fully informative.

The whole subject of ante-nuptial agreements was so thoroughly considered in *Levy v. Sherman, supra,* that little advantage would be derived from a further extensive review of it at this time.

The principal question on the merits is whether the case is controlled by *Levy v. Sherman,* or falls outside of its operation because the marriage was one of convenience.

The appellant points out that at the time of the marriage the husband was 62 years old and the wife 42. He asserts that the marriage was one of convenience, that in such a marriage business judgment is not clouded by the ardor of youth, and consequently that no confidential relations were created and no duty of disclosure arose. In support of this position he cites a portion of an annotation in 27 A.L.R. 2d at page 889 and a number of cases from other states.

The facts, so far as disclosed in this case, differ materially from those shown in such cases as *Re Malchow,* 143 Minn. 53, 172 N.W. 915, and *Re Koeffler,* 215 Wis. 115, 254 N.W. 363, which are two of the marriage of convenience cases relied upon by the appellant. In the *Malchow* case the parties were comparative strangers when they married. The husband wanted a housekeeper and offered the wife a good home and by an ante-nuptial contract agreed to bequeath $2,000 to her. She was in debt, owned land of little value and appeared to wish a home for herself and two children. She accepted the offer. In the *Koeffler* case it was stated that each case must be decided on its own facts, and in that case the wife specifically told the prospective husband that she did not love him. There is no such testimony here.

In the annotation in 27 A.L.R. 2d above referred to, following references to the *Malchow* and *Koeffler* cases and several others, it is stated (at page 891) that "it does not invariably follow from the fact that the parties are past middle life, that they do not, at the time of entering into an ante-nuptial property settlement, occupy a confidential relationship imposing the duty to make full disclosure of their property interests." In support of this statement the author cites *Peet v. Peet,* 81 Iowa 172, 46 N.W. 1051; *Re Flannery,* 315 Pa. 576, 173 A. 303; and *Re McClellan's Estate,* 365 Pa. 401, 75 A. 2d 595. All of them sustain the text, though on the facts of the case, the agreement was upheld in *Peet v. Peet.* In the *Flannery* case, the parties were each 55 years old when they executed an ante-nuptial contract releasing all rights to each other's property. In the *McClellan* case, the prospective husband was 80 and the prospective wife was 58 at the time of their marriage, each had been married before and each had a child or children.

We find no substantial ground upon which to draw a distinction between this case and *Levy v. Sherman* insofar as the question of a marriage of convenience is concerned. In this case the disparity in age was 20 years; in the *Levy* case, it was 23. Mr. Levy was 50 years old,

Mr. Gettig 62; the wives were 27 and 42, respectively. It was not the first marital venture for either party in either case, and neither of the marriages involved in litigation can be said to have occurred in the early flush of youth.

In *Levy v. Sherman,* after stating that "an important question" was "whether, at the time of the execution of the ante-nuptial agreement, a confidential relationship existed" this Court rejected the rule followed in some cases in other jurisdictions that a confidential relationship does not arise until the parties are engaged to be married. The Court quoted from *Pierce v. Pierce,* 71 N.Y. 154, 158, 27 Am. Rep. 22, the following, which seems quite appropriate in the present case:

"The relationship of parties who are about to enter into the married state, is one of mutual confidence, and far different from that of those who are dealing with each other at arm's length. * * *"

The Court next cited the case of *Clark's Estate,* 303 Pa. 538, 154 A. 919, and cited with apparent approval its holding that ante-nuptial contracts depend for their validity upon the reasonable provision for the wife, or full and fair disclosure to the wife of the husband's worth, and that it was incumbent upon the husband to disclose to the wife the value of his property before asking her to waive all rights therein. It will be noted that this rule is applicable to cases where nothing is provided for the wife under the agreement as well as to cases where something is provided for her. The appellant's contention that because nothing was left to the wife the disproportionate amount cases are inapplicable would not avail against this rule. We think that it would be quite illogical to hold that if a marriage contract provides too little for the wife it may be set aside, but that if it provides nothing at all, it is valid. In the annotation 27 A.L.R. 2d already referred to, it is stated (at pages 891-892):

"Where a confidential relationship exists between the parties to an ante-nuptial contract requiring the exercise

of the utmost good faith in dealings between them, if no provision is made for the wife therein, or if the provision secured for her is inequitable, unjust, and unreasonably disproportionate to the means of the intended husband, taking into consideration the rights given her by law in the property of her husband in the event of his death prior to her death, then a presumption arises that the intended wife was not fully informed as to the value and extent of her prospective husband's property, and the courts will refuse to give effect to the contract, in the absence of proof affirmatively disclosing that proper disclosure was in fact made."

See also 26 Am. Jur., 893-894, *Husband and Wife*, §288, and 41 *C.J.S.*, 555, *Husband and Wife*, Sec. 80.

We hold that a full and frank disclosure of the husband's worth is required quite as much in a case where the ante-nuptial agreement makes no provision for the wife as where it makes an inadequate or disproportionately small provision for her. What was said in *Levy v. Sherman* (at pages 73-74 of 185 Md., pages 29-30 of 43 A. 2d) is then directly in point: "We shall not attempt to reconcile the authorities. We think when an ante-nuptial contract is entered into in contemplation of marriage, whether the parties are engaged to marry at the time or not, it is required of each to make a frank, full, and truthful disclosure of their respective worth in real as well as personal property. And in such cases where the disclosure of worth is not full and frank, fair and truthful, and the allowance provided in the agreement is unfairly disproportionate to the worth at the time, the concealment gives rise to the implication of fraud, and the burden of proof is cast on those claiming under it when the instrument is attacked, to show that it was entered into freely, voluntarily, and knowingly and that each was given the opportunity to obtain independent legal advice. It would seem to be anomalous to say that the instant before a woman signs an ante-nuptial agreement she deals with her prospective husband as a stranger, and he with her, but that in the twinkling of an eye,

612

after they append their signatures to the instrument, a confidential relation exists between them. In most instances such a conclusion is not based on the realities of life, but is more the product of fantasy. We cannot subscribe to the doctrine that a man and a woman, under such circumstances, are to be treated like merchant princes dealing with each other, each implemented with the exacting and hard instruments of commercialism."

The burden of proof was thus cast upon the appellant to show a full and frank disclosure of the worth of the testator, and this burden has not been met. Such proof as there is on this subject shows that there was no disclosure at all of the prospective husband's worth at the time of the signing of the agreement, and there is no proof of any disclosure at any other time.

The appellant seeks to supply the lack of such proof by attempting to show that the appellee knew what his worth was. She did have, as she testified, knowledge of the fact that the husband had an electrical business and supposed that he owned the business properties and two lots improved by three houses in a waterfront neighborhood in Baltimore County, one of which houses, at least, was quite a substantial building. We find nothing to show that she knew the actual value of the electrical business or of any of the real estate, or what if anything he owed, or what intangible property he may have owned. Such indefinite knowledge or information falls far short of actual knowledge of his worth. See *Flannery's Estate,* 315 Pa. 576, 173 A. 303, in which the Supreme Court of Pennsylvania said: "It might well be that a woman could live in the same neighborhood with a man, and not know what real estate he possessed, and, even if she did know that he owned real estate, have no idea of its value * * *. It was incumbent on him, before he could in fairness ask her as his prospective bride, to waive all rights in his property to make full disclosure to her. This is the import of all our cases, and is a wise and salutary rule."

The appellant urges that gifts made by the testator to his wife during the period of their marriage and pro-

visions made for her by his will should be considered in this case where the validity of the ante-nuptial agreement is the question at issue. He cites no authority for this contention. We do not see how subsequent generosity can validate an agreement not valid when made.

The appellant also contends that the appellee misled the testator by representing that she had never been married previously. This charge is based upon her name appearing on the marriage license and certificate as "Cora Gebauer", which was her maiden name and not as "Voigt", which was the name of her divorced husband. The appellant fails to say that each of these documents explicitly states that she was divorced.

After this lengthy review of the present case, and after eliminating from our consideration all of the evidence which we think was not properly admitted, (See *Dowell v. Dowell,* 177 Md. 370, 9 A. 2d 593), we are of the opinion that *Levy v. Sherman, supra,* is controlling in this case.

Accordingly the decree will be affirmed.

*Decree affirmed, with costs.*