# Barker *et als. v.* Barker.

## *Bill in Equity for the Specific Performance of a Contract.*

1. *Specific performance of a contract; what necessary for such relief.*—In order to have a contract specifically enforced in a court of equity, the contract must appear to be founded on an adequate consideration, just, reasonable, equal in all its terms, and parts and mutual in its operation and legal effect. If in either of these respects the contract is wanting, the court will abstain from interference and leave the parties their legal remedies.

2. *Ante-nuptial contract; how to be construed.*—Parties betrothed in marriage occupy towards each other confidential relations, and contracts made between them while occupying such relation, in regard to the marital rights of either in their respective estates, after marriage, are to be construed according to the same rules of good faith and subjected to the same scrutiny as in other cases of confidential relations.

3. *Same; same.*—The relations between an intended wife and her future husband being confidential, naturally giving the man great influence over the woman, courts regard with rigid scrutiny an ante-nuptial contracct which deprives the intended wife of any prospective interest in the estate of her future husband; and especialy is this the case where such relinquishment on her part is made without any provisions for her support in case she survives the husband.

4. *Same; same; bill to enforce ante-nuptial contract; case at bar.* Where, in a bill filed by the distributees of an intestate against his widow to specifically enforce an ante-nuptial contract entered into between the deceased and the defendant, it is shown by the contract which was made an exhibit to the bill, that the respondent in consideration of $500 to be paid to her by her future husband, after their marriage, relinquished all her right in and to any of the property, real or personal, of her intended husband, which she might otherwise have as his wife during his life and as his widow after his death. The prayer of the bill was for the enforcement of this contract and to prevent

[Barker *et als.* v. Barker.]

the widow from having homestead and exemptions and a dower set apart to her. Defendant filed a plea in which she set up that said contract was handed to her to be signed just a few moments before the marriage ceremony, and that without knowing its contents and having full confidence in her intended husband, and believing that it was a contract by which he obligated himself to give her $500 which he had promised to do if she would marry him, she signed it. It was also averred in the bill that nothing was said prior to the contract about her waiving any right she might acquire by marriage with her husband in his property, and further, that his estate was, at that time, and at the time of his death worth ten thousand dollars. At the date of the marriage the husband was 87 years of age and the wife was 60 years of age. *Held*: That such plea was a sufficient bar to the enforcement of the contract.

APPEAL from the Chancery Court of Pike.

Heard before the Hon. WILLIAM L. PARKS.

The facts in this case are sufficiently stated in the opinion.

WATTS, TROY & CAFFEY, for appellants.—At the time the contract of January 4, 1897, was entered into between G. W. Barker and Clara A. M. Hicks, there was absolutely no relation of trust or confidence existing between them. The parties could read, and the law will not permit the appellee to say she did not read the contract. She could have read it if she desired to do so, and is bound thereby.—*Watts v. Burnett*, 56 Ala. 340; *Goetter v. Pickett*, 61 Ala. 387. The appellee does not claim in her plea to have been either an idiot, lunatic, minor or married woman when she signed the contract, and she is bound.—*Ins. Co. v. Warten*, 113 Ala. 479.

It is clear that at common law the wife could not barter away her prospectice dower interest; the right is inchoate and not the subject of a sale.—*Gould v. Wormack*, 2 Ala. 88; *Blackmon v. Blackmon*, 16 Ala. 635-6; *Webb v. Webb*, 29 Ala. 601-2; *Martin v. Martin*, 22 Ala. 103-4.

It is equally clear, however, that a court of equity *has jurisdiction* specifically to enforce the performance of ante-nuptial contracts affecting property of the husband, just as much as it can, and on like principles as

it does, enforce other contracts.—*Gould v. Wormack,.* 2 Ala. 90-1; *Webb v. Webb,* 29 Ala. 600; *Goodlett v. Hansel,* 66 Ala. 156; Stewart on Husband and Wife, §5266. In determining whether the court will require performance of an ante-nuptial contract, no distinction is made between this class of contracts and any other class, the performance of which is asked for in equity. *Gould v. Wormack, supra; Webb v. Webb, supra.*

Where such contract, or any other contract for that matter, is executory merely, the court will exercise its sound discretion in determining whether to enforce per-, formance, and will not enforce it "unless it is just, reasonable in all its parts, and founded on adequate consideration."—*Gould v. Wormack,* 2 Ala. 92; *Webb v. Webb,* 29 Ala. 601-2.

FOSTER, SAMFORD & CARROLL, *contra.*—A bar of dower by an ante-nuptial contract is of equitable origin. At common law no right could be barred before it accrued, and no estate of freehold could be barred by any collateral satisfaction for recompense.—*Gould v. Wormack,* 2 Ala. 83; *Blackmon v. Blackmon,* 16 Ala. 633; *Webb v. Webb,* 29 Ala. 588; *Martin v. Martin,* 22 Ala. 104; *Goodlett v. Hansell,* 66 Ala. 156. Such a contract, while void at law, is not the subject of equitable cognizance, so as to make the same binding, unless its terms are fair and reasonable within themselves, and based upon a full and sufficient consideration, free from fraud and imposition.—*Gould v. Wormack, supra; Webb v. Webb, supra; Grogan v. Garrison,* 27 Ohio State, 50.

While an ante-nuptial contract by which the wife releases all claims against the estate of her husband upon his decease, may be fairly made, yet, from the confidential relations between the parties, it will be regarded with the most rigid scrutiny. It seems that the presumption is against such a contract, and the burden of proof is cast on the husband to show perfect good faith, and strict proof is required. The relationship is one of confidence. And far different from that of those who are dealing with each other at arms' length. It is the duty of each to be frank when about to enter into an antenuptial contract, by a full disclosure of all facts and circumstances which may in any way affect the agree-

ment.—*Pierce v. Pierce,* 71 New York, 154; *Taylor v. Taylor,* 144 Ill. 445; *Hessick v. Hessick,* 169 Ill. 486; *Graham v. Graham,* 143 N. Y. 573.

"To be a valid bar, the contract must be in good faith, and no advantage must be taken of the intended wife's confidence in her future husband, as the relation of betrothed persons is in a high degree one of confidence, and is one of those which give rise to the requirement of *uberrima fides* in transactions between persons standing therein to each other."—*Kline v. Kline,* 57 Pa. St. 120, and 64 Pa. St. 122; *Shea's Appeal,* 121 Pa. 324; *Hinkle v. Hinkle,* 34 W. Va. 142.

And in all transactions where confidence is reposed and accepted, the transaction will not stand, unless there was a full, fair and open statement of all the facts and a thorough and perfect understanding; and the law raises a *presumption* of undue advantage and influence, and casts the burden on the one who received the benefit of the contract. This principle is thoroughly recognized by the Supreme Court of Alabama.—*Noble v. Moses,* 81 Ala. 538; *Waddell v. Lanier,* 62 Ala. 349; *Burke v. Taylor,* 94 Ala. 33; *Malone v. Kelley,* 54 Ala. 39.

DOWDELL, J.—The appeal in this case is prosecuted from the decree of the chancellor sustaining the sufficiency of respondent's plea to that part of the complainants' bill seeking the specific performance of an ante-nuptial contract made by respondent with the father of complainants. This contract is made an exhibit to the bill, and by its terms the respondent in consideration of five hundred dollars to be paid by G. W. Barker—the other contracting party, whom she had promised to marry,—the preamble to said contract reciting: "That whereas, a marriage is contemplated and intended to be had between said parties," etc., consented and agreed to waive and relinquish each and all of her rights in and to any of the property, real or personal, of her intended husband, the said G. W. Barker, which she might otherwise have as his said wife, during his life, and as his said widow after his death. The bill avers that the contemplated and intended marriage was consummated, and that after the marriage, the five

hundred dollars was paid by the said Barker to the respondent. That said marriage took place on the day of the date of said contract now sought to be enforced, to-wit, January 4th, 1897, and the said Barker died on the 1st day of April, 1899, about two years after said marriage. Letters of administration were issued to the respondent by the probate court of Pike county upon the estate of said Barker, and proceedings were commenced in said court to set apart a homestead and exemptions under the statute to the respondent as the widow of said deceased, and thereupon the present bill was filed.

The plea of the respondent admits the execution of the contract by the respondent, but denied that the contract is fair and just in its terms, or that it is such a contract as should be specifically enforced by a court of equity. Among other things it is averred in the plea that the contract was handed to her to be signed just a few minutes before the marriage ceremony, that she did not know its contents and did not think it necessary to read it over, having full confidence in her intended husband, and believing that it was a contract made by him, he having signed first, securing to her a gift of five hundred dollars, which he had several times promised to make her after their marriage, if she would marry him; that he had never in any of their conversations concerning their proposed marriage, and when the matter of his intended gift to her of five hundred dollars was mentioned, suggested or intimated any such thing as a waiver or relinquishment by her of any of her marital rights in his estate during his life or after his death. By reason of her confidence in her intended husband, and his repeated representations of his intended gift to her of the five hundred dollars, and the time and circumstances under which she signed the said contract, it is averred that undue advantage was thereby taken of her. It is also averred in the plea that her said husband at the time of their marriage was seized and possessed of an estate worth ten thousand dollars, consisting of lands worth six thousand dollars, and four thousand worth of personal property, and that he died seized and possessed of this same property, and that it was of the same value, viz., ten thousand dollars

at the time of his death. It also appears both from the
bill and the plea, that said Barker at the date of the
marriage was eighty-seven years old, and the respondent
a widow of sixty years of age, and it is also averred in
the plea that the respondent had no estate of her own
at the time of the marriage, and at the death of her said
husband, G. W. Barker.

On the foregoing statement of facts the vital ques-
tion in the case, and presented at the very threshold, is,
is this contract, which these complainants, as the heirs
at law of G. W. Barker, deceased, now ask to have
specifically performed, perfectly fair, just and equal in
its terms and circumstances?—3 Pom. Eq. § 1405.

The contract and the situation of the parties must be
such that the remedy of specific performance will not
be harsh or oppressive.—3 Pom. Eq. § 1405. "The con-
tract must appear to be founded on an adequate con-
sideration, fair, just, reasonable, equal in all its terms
and parts, and mutual in its operation and legal effect.
If in either of these points there be a well founded ob-
jection, the court abstains from interference, leaving
the parties to their legal remedies."—3 Brick. Dig. 361,
§ 421; *Moon v. Crowder*, 72 Ala. 79; *Irwin v. Bailey, Ib.*
467; *Derrick v. Monette,* 73 Ala. 75.

Although the parties may be without a remedy at
law to enforce the contract as a bar to the widow's claim
of dower and homestead in her deceased husband's es-
tate, and may seek aid in a court of chancery, still "its
aid cannot be had unless the contract is fair, just, and
reasonable in all its parts, even if there be neither fraud
nor misrepresentation, mistake or surprise, or if the
inadequacy be not so great as to be of itself evidence of
fraud."—*Gould v. Wormack,* 2 Ala. 97; *Webb v. Webb,*
29 Ala. 588.

The adequacy of consideration in the present con-
tract, when tested by comparison, as in the case of *Webb
v. Webb, supra*, with the value of the widow's right of
exemption in both real and personal property, and of
dower in the lands, will be found to be greatly deficient.
At the death of her husband she was entitled to have set
apart to her a homestead not to exceed in value $2,000;
this for her life.   Dower out of the remaining lands,
which are estimated to be worth $4,000. Out of the per-

sonal property $1,000 in addition to the specific exemp-
tions under the statute; all of this for her support and
comfort during her life, and an absolute right as a dis-
tributee to one-fifth of the personal property remain-
ing after exemptions set apart. Valuing her life estate
under the rules of the statute, it is evident that the
five hundred dollars is greatly disproportionate to the
value of the estate, which she would be entitled to have
set apart to her at the death of her husband. And con-
sidering the very limited life expectancy of her husband,
at the date of the contract, he being then a man of 87
years of age, the diminution from value of the wife's
interest in the estate of the husband at the time of his
death would be little.

Parties betrothed in marriage occupy towards each
other confidential relations, and contracts when made
between them, while occupying such relation in regard
to the marital rights of either in their respective estates,
after marriage, are subject to the same rules of good
faith and rigid scrutiny as in other cases of confidential
relations, such as trustees and *cestui que trust,* guar-
dian and ward, parent and child, etc.—*Pierce v. Pierce,*
71 N. Y. 154; *Hessick v. Hessick,* 169 Ill. 486; *Taylor v.
Taylor,* 144 Ill. 445; 14 Am. & Eng. Encyc. Law, p. 546.

"The relations between the intended wife and her
future husband are regarded as confidential, and natur-
ally give to the man great influence over the woman
with whom he has entered into an engagement of mar-
riage. The courts regard with rigid scrutiny an ante-
nuptial contract which deprives her of any prospective
interest in the estate of her intended husband, and es-
pecially is this required in a case where such relin-
quishment on her part is made without any provision
for her support in case she survives him."—*Graham v.
Graham,* 143 N. Y. 573.

To be a valid bar, the contract must be in good faith,
and no advantage must be taken of the intended wife's
confidence in her future husband as the relation of be-
trothed persons is in a high degree one of confidence,
and to one of those which gives rise to the requirement
of *uberrima fides* in transactions between persons
standing therein to each other."—*Kline v. Kline,* 57 Pa.
St. 120; *Kline's Case,* 64 Pa. St. 122; *Shea's Appeal,* 121
Pa. St. 324; *Hinkle v. Hinkle,* 34 W. Va. 142.

We think the principles laid down in the authorities above cited are eminently correct, and under these authorities, the facts averred in the plea, if true, would prevent a court of equity from lending its aid to the complainants for the specific performance of the contract.

The decree of the chancellor sustaining the sufficiency of the plea is affirmed.