## IN RE ESTATE OF FRIEDRICH MALCHOW, DECEASED.

### MARGARET MALCHOW v. PAULINE MALCHOW AND OTHERS.[1]

#### June 13, 1919.

#### No. 21,233.

**Antenuptial contract.**

    1. Antenuptial contracts are not against public policy, but are regarded with favor as conducive to the welfare of the parties making them, and will be sustained whenever equitably and fairly made.

**Fraud — unfair dealing by person holding fiduciary relation — presumption — burden of proof.**

    2. Fraud will be presumed when there has been a transaction between persons occupying a fiduciary relationship, whereby one in whom

1Reported in 172 N. W. 915.

confidence was reposed, or who possessed controlling influence over the other, obtained benefits without consideration, or for an inadequate consideration. The onus is on a person obtaining such benefits to show that he acted righteously.

**Same — when contract is valid.**

3. There can be no valid contract between two persons except after a full and a fair communication and explanation of every material particular within the knowledge of the one who seeks to uphold it against the other, if it appears that the former possessed influence which he abused, or had gained confidence which he betrayed.

**Same — inadequacy of consideration — antenuptial contract.**

4. In determining the validity of a contract between parties when one stands in a fiduciary relation to the other, inadequacy of consideration is an important factor, but no obligation rests upon a man about to marry to secure to his prospective wife a due proportion of all his property, under penalty, if he does not, of having his contract with her decreed prima facie a fraud upon his part.

**Antenuptial contract — evidence.**

5. The relations of a man and woman betrothed to one another are presumably, but not invariably, confidential. Under the evidence the trial court was not bound to find that the parties to the antenuptial contract here involved occupied a confidential relationship when it was executed.

Margaret Malchow elected not to take under the will of her husband, Friedrich Malchow, and appealed from an order of the probate court for Jackson county disallowing her application to take under the statute and from an order refusing her a widow's allowance for maintenance. The appeals were heard in the district court for that county before Dean, J., who found that the antenuptial agreement between the parties was a valid, existing and binding contract; that she was not entitled to receive any part of the estate of her deceased husband, Friedrich Malchow, except the sum of $2,000, and affirmed the orders of the probate court in the distribution of property. Her motion for amended findings was denied. From an order denying her motion for a new trial, Margaret Malchow appealed. Affirmed.

*E. H. Nicholas, H. C. Carlson* and *H. H. Dunn,* for appellant.

*S. B. Wilson,* for respondents.

LEES, C.

On February 23, 1909, Friedrich Malchow, a widower 65 years old, and appellant, a widow of 53, were married. He was the father of 12 children, and she the mother of 8. Both were engaged in farming, he in Jackson county, Minnesota, and she in Barron county, Wisconsin. Their acquaintance began in December, 1908, when he came to her home with a neighbor who introduced them. He remained one day and they talked of marriage, but she told him she did not want to leave her farm as there were debts against it. About two weeks later he returned and spent another day at her home. There was further talk of marriage. He advised her to transfer her farm and personal property to two of her sons, saying that if she married him he would take good care of her and that her two youngest children could come with them to Jackson county. She promised to marry him, and February 23 was set as the date for their marriage. He returned to his home and there was some correspondence between them, but none of his letters were preserved. He came back on February 20 and told her he was expecting a paper by mail and that they could not get married until it came. She asked him what it was and he said: "That is a paper   *   *   *   that each widow woman has to sign when she got married the second time." She said she did not have to sign one before, and he replied: "Why that is different *   * · *   when a widow woman gets married the second time they have to sign that paper." The paper came the day before they were married. She did not read it and he did not explain it to her. They went together to the office of the county clerk of Barron county. She told the clerk she did not know what the paper contained. He then read it to her in Malchow's presence and asked her if she understood it. She looked as if she did not. He read part of it again and explained that it meant that she would get $2,000 from Malchow's estate if he died first, and no more. She said that was all right as she had some property and expected to get a good home. It was then signed in his presence and in the presence of the county judge, who took the parties' acknowledgment. The entire transaction occupied but a short time. The county judge corroborated the testimony of the county clerk, of which the foregoing statement is an abridgement.

The document thus executed was an antenuptial contract. By its terms appellant was to get $2,000 in lieu of all provisions made by the laws of Minnesota for the widow of an intestate, and Malchow waived all rights he might have in her property in case he outlived her. In fact she then had no property, having shortly theretofore transferred all of it to her two sons in accordance with Malchow's suggestion. Part of her real property was subsequently reconveyed to her. The next day they were married and within a few days went to Jackson county, where they lived together until December, 1914, when Malchow died. He left a will which was admitted to probate. It recited the provisions of the contract and bequeathed $2,000 to appellant in fulfilment thereof. He made no other bequest in her favor. His estate, after paying all charges against it, consisted of a homestead in Lakefield worth about $3,500 and $28,010.52 in money and securities. She was not satisfied with what he gave her and applied to the probate court for a widow's statutory allowance and distributive share in the estate, and appealed to the district court from orders denying her applications. The orders of the probate court were affirmed, a motion for a new trial denied, and the case comes here on appeal.

There were findings that when appellant married Malchow she did not know the extent of his property and made no effort to ascertain what he owned, but was assured by him that he had enough to keep them; that she had ample opportunity after marriage to learn of his financial condition, but did not concern herself about it or about the antenuptial contract; that she did not assist him in accumulating any of the property he left; that no misrepresentation or fraud was practiced upon her; that she was fully advised as to and knew the contents of the contract when she signed it, and that she is a woman of good mind and ability and was capable of understanding the nature and effect of the contract in question.

A careful examination of the record has satisfied us that the evidence sustains these findings, and we pass directly to a consideration of the question whether, as a matter of law, the court was right in concluding that appellant was not entitled to be relieved from the obligations of her contract.

A man and woman in the situation of these parties frequently agree, before marrying a second time, that their property shall ultimately go to their children by the first marriage. The ties of blood relationship are strong. But for their existence, few antenuptial contracts would be made. Their purpose is to alter the interest which each of the parties would take in the property of the other had the contract not been made. A bona fide and reasonable agreement, securing to the wife the enjoyment of a portion of her husband's property during coverture, or after his death, will be enforced. It has always been permitted that a man and woman contemplating marriage may fix their property rights by agreement, equitably and fairly made, and exclude the operation of the law in respect to fixing such rights. Desnoyer v. Jordan, 27 Minn. 295, 7 N. W. 140; Hosford v. Rowe, 41 Minn, 245, 42 N. W. 1018. In Appleby v. Appleby, 100 Minn. 408, 111 N. W. 305, 10 L.R.A.(N.S.) 590, it was said that "marriage settlements  *  *  *  are matters of history and have been upheld and sustained by the courts from the earliest times. They are not against public policy, but, on the contrary, are regarded with favor, as being conducive to the welfare of the parties and subservient to the best purposes of the marriage relation, and are uniformly sustained when free from fraud or not expressly prohibited by some statute." Such is the doctrine of the courts quite generally. Schouler, Dom. Rel. § 173; Bibelhausen v. Bibelhausen, 159 Wis. 365, 150 N. W. 516; Johnston v. Spicer, 107 N. Y. 185, 13 N. E. 753; Buffington v. Buffington, 151 Ind. 200, 51 N. E. 328; McGee v. McGee, 91 Ill. 548. The right to make antenuptial contracts is recognized by statute in this state. G. S. 1913, § 7150. There is nothing inherently suspicious or bad about them. In the absence of fraud or imposition upon one of the parties by the other, they ought to be sustained.

The contention in the case at bar is that a constructive fraud was perpetrated upon appellant because Malchow did not tell her what he was worth or what his property consisted of, or what her rights in it would be if she became his widow, and so procured her execution of the contract for an inadequate consideration. Fraud will be presumed when there has been a transaction between persons occupying a fiduciary relation whereby the one in whom confidence is reposed, or who possesses

controlling influence over the other, obtains a benefit or advantage, either without consideration or for an adequate consideration. The onus is on the person obtaining such benefits to show that he acted righteously, and on grounds of public policy undue influence will be prima facie presumed from the peculiar relations subsisting between the parties to the transaction. An apt statement of these principles is found in 1 Story, Eq. Jur. §§ 430, 431, where it is said: "If confidence is reposed, it must be   *   *   *   preserved from any intermixture of imposition. If influence is acquired, it must be kept free from the taint of selfish interests   *   *   *   and overreaching bargains." These principles have been applied by this court to cases involving contracts: Ashton v. Thompson, 32 Minn. 25, 18 N. W. 918; Shevlin v. Shevlin, 96 Minn. 398, 105 N. W. 257; Slingerland v. Slingerland, 115 Minn. 270, 132 N. W. 326; to the case of a will procured by undue influence, Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502, and to a case involving the assent of a wife to the provisions made for her by her husband's will. State v. Probate Court of Hennepin County, 129 Minn. 442, 152 N. W. 845, L.R.A. 1915E, 815.

This case is akin to those cited, in that it is sought to avoid a contract essentially on the ground of constructive fraud, or fraud presumed from the circumstances and condition of the parties contracting. The outcome of actions of this character depends on the presence or absence of influence acquired and abused, or confidence reposed and betrayed. If these elements are present, there can be no valid contract between two persons except after a full and fair communication and explanation of every material particular within the knowledge of the one who seeks to uphold it against the objections of the one who trusted him. The confidential relation, of itself, is prima facie evidence of fraud. Bispham, Prin. of Eq. §§ 231, 232. Inadequacy, or the absence of consideration, is always an important factor. It is present here, for appellant gets, by the contract, but a small portion of what she would otherwise get under the statutes. Standing alone, it is not sufficient ground for avoiding the contract. No obligation rests upon a man about to marry to secure to his prospective wife any proportion, due or otherwise, of all his property, under penalty, if he does not, of having his antenuptial contract with

her decreed prima facie a fraud upon his part. Russell v. Russell, 60 N. J. Eq. 282, 47 Atl. 37.

In addition to inadequacy of consideration, there must be a confidential relationship between the parties before fraud will be inferred. Persons under contract to intermarry are presumed to stand in a confidential relation to each other. They are not in the same category as buyers and sellers who deal at arm's length. Kline v. Kline, 57 Pa. 120, 98 Am. Dec. 206; Graham v. Graham, 143 N. Y. 573, 38 N. E. 722; Barker v. Barker, 126 Ala. 503, 28 South. 587; 1 Page, Contracts, § 190. But the presumption is not conclusive that a man obtains the confidence of or gains a controlling influence over the woman he is pledged to marry, merely because they have agreed to intermarry. Marriages of convenience take place in which the impulses of sentiment play no part. They are of a purely business character. The woman may have no greater confidence in her intended husband than she has in other acquaintances, and he may have no greater influence over her actions than they have. Such seems to have been the case here. The parties were comparative strangers when they married. Malchow wanted a housekeeper His wooing was brief and businesslike. He first offered appellant a good home, and later, by the antenuptial contract, $2,000 after he died. She was in debt, her land was of comparatively small value, her older children were about to start in life for themselves, and she appears to have desired a home for herself and her two younger children, and so she accepted the offer. There was no courtship or engagement in the usual sense of those expressions. Apparently there was an entire absence of professions of affection on either side. He began to talk marriage at his first meeting with her, and, at the second, it was agreed upon. He was not her superior in intelligence or wordly experience. The element of control over her actions was not present and there was an absence of long association resulting in the repose of her entire confidence in him. These were the important features in Slingerland v. Slingerland, supra, and State v. Probate Court or Hennepin county, supra.

The trial court failed to find that Malchow had gained appellant's confidence or that he possessed influence over her. Appellant moved for

an amendment to the findings which would establish the existence of these essential elements in her case. The court refused to make the amendment. This is equivalent to a finding negativing their existence. The evidence is not so conclusive as to have made it the duty of the court to find that they did exist. If the amendment had been made, it would have found sufficient support in the evidence. It cannot be said of the findings as they stand, that they are manifestly contrary to the weight of the evidence, and hence the case must be disposed of as though the parties dealt at arm's length in making the contract. If they did, the facts as found by the trial court do not entitle appellant to be relieved from the obligations of her contract.

Order affirmed.