In re the Marriage of John J. **RUDBECK, Petitioner, Appellant,**

v.

**Carol Ann RUDBECK, Respondent.**

No. C8–84–1180.

Court of Appeals of Minnesota.

April 2, 1985.

Robert R. Alderman, Alderman Law Office, Ltd., Brainerd, for appellant.

Edward L. Winer, Minneapolis, for respondent.

Heard, considered and decided by POPOVICH, C.J., and NIERENGARTEN and RANDALL, JJ.

## OPINION

NIERENGARTEN, Judge.

Jon Rudbeck appeals from the Judgment dissolving his marriage to respondent Carol Rudbeck. We affirm.

## FACTS

John and Carol were married on May 15, 1976. They had no children, but Carol has two children from a previous marriage.

John's occupation involves the purchase of real property, construction of homes thereon and the sale of same. He receives $22,796.52 in annual payments from certain contracts for deed which the parties own, a substantial portion of which is not taxable because they are deemed to be return on principal. John testified that he suffers from severe back pain which substantially affects his ability to earn an income. Independent witnesses, as well as Carol, testified that John has only missed a few days of work, rarely takes medication and has been seen lifting heavy objects.

Carol, on the other hand, worked part-time, and recently full time, at a bakery. Her pay ranged from $3.35 to $4.00 per hour. She now intends to pursue a career as a cosmetologist and will seek training in Tulsa, Oklahoma. The trial court found that Carol requires additional training and financial support to permit her to enter the job market. The court also invalidated certain promissory notes of John payable to his brother, Roger, for a debt allegedly owed because Roger performed more than half of the work in constructing certain homes that the brothers traditionally shared fifty-fifty. John alleges his back problem prevented this sharing but the

court disagreed and found the notes to be "fraudulent and without legal effect."

The court also concluded that a document allegedly signed by Carol transferring her one-half interest in certain property to Roger Rudbeck was forged, based on the testimony of a handwriting expert.

Finally, the court ordered John to pay $500 per month for 24 months as spousal maintenance and to contribute $4,000 towards Carol's attorneys' fees.

Five days before their marriage, the parties entered into an antenuptial agreement which attempted to govern the rights and liabilities of the parties if they should happen to get divorced. It did not affect the rights of Carol if John were to die. Carol now argues this agreement is invalid because she did not have the opportunity to consult with an independent attorney and because John did not make a full disclosure of all his assets.

## ISSUES

Did the trial court abuse its discretion in:

1. Disregarding the Antenuptial Agreement between the parties?

2. Finding that certain alleged Promissory Notes between John and his brother are "fraudulent and without legal effect"?

3. Finding that Carol's signature was forged on a document purporting to transfer a marital asset?

4. Dividing the marital property?

5. Awarding Carol spousal maintenance?

6. Ordering John to contribute $4,000 towards Carol's attorney's fees?

## ANALYSIS

### I

[1] Antenuptial agreements governing property settlements upon dissolution are valid in Minnesota. *Englund v. Englund*, 286 Minn. 227, 230, 175 N.W.2d 461, 463 (1970); *Hill v. Hill*, 356 N.W.2d 49, 53 (Minn.Ct.App.1984), *pet. for rev. denied*, (Feb. 19, 1985). The current requirements

for a valid antenuptial agreement are contained in Minn.Stat. § 519.11 (1984); effective August 1, 1979. Rudbeck's agreement was entered into before this date and is therefore governed by the common law.

■ "At common law, a presumption of fraud arises where the parties to an antenuptial agreement stand in a confidential relationship to one another and there is inadequate consideration to support their agreement." *Hill*, 356 N.W.2d at 53. It is presumed that the parties stand in a confidential relationship because of their contract to marry. *In re Estate of Malchow*, 143 Minn. 53, 59, 172 N.W. 915, 917 (1919). Here the consideration was clearly inadequate because Carol would receive only a small portion of what she would otherwise be entitled. Accordingly, there is a presumption of fraud. In order to overcome this presumption, the proponent, not contestant, must "show there was no fraud or concealment, and that [the other party] knew the extent, character, and value of his property and the nature and extent of her rights as his wife and widow." *Slingerland v. Slingerland*, 115 Minn. 270, 275, 132 N.W. 326, 328 (1911). In addition to full disclosure of assets, the proponent must prove knowledge of the right to independent legal counsel. *Estate of Serbus v. Serbus*, 324 N.W.2d 381, 385 (Minn.1982); *see Hill*, 356 N.W.2d at 53; Minn.Stat. § 519.11, subd. 1 (1984).

■ First, the agreement itself does not recite compliance with any of the requirements necessary for a valid antenuptial agreement. Second, only John was represented by counsel. The first time Carol saw the contract was in the office of John's attorney, when she was first asked to sign the document. She signed the agreement only 5 days before their marriage after it was made clear that if there was no signature there would be no marriage. This was sufficient evidence for the trial court to find that Carol "had no meaningful opportunity to consult an attorney prior to signing" the agreement.

■ Further, John failed to make a full disclosure of his assets. John suggested that Carol had the opportunity to determine the extent of his assets because of all the "stuff laying all over [his] desk." However, Carol was not a partner in John's business and didn't possess a description of all property owned, purchase price, market value and any debts existing against it. The trial court correctly found that John "at no time made a full and fair disclosure of his assets to [Carol] prior to execution of the Antenuptial Agreement." A trial court's findings will not be set aside or disturbed "unless clearly erroneous." Minn.R.Civ.P. 52.01.

## II

■ The trial court held that certain promissory notes between John and his brother Roger were "fraudulent and without legal effect." The trial court was correct in so holding.

First, prior to the commencement of the dissolution proceedings, none of the notes appear as liabilities on financial statements prepared for the First Bank of Brainerd even though John was required to list debts owing to any relatives and/or friends.

Second, the notes were allegedly executed to compensate Roger for additional work that Roger put in on the homes constructed on John's property and lots. The evidence, however, makes it clear that John and Roger always helped each other and that the work split was approximately equal. Additionally, John made no attempt to show what work was done by each of them, how many hours were involved and when the work was performed.

Third, and what amounts to insult upon injury, the forms used to prepare the notes were not printed until two to three years after the alleged date of execution. The notes were obviously executed in anticipation of the divorce proceedings.

## III

■ The trial court found that Carol's signature on a December 10, 1978 document transferring a 50% interest to Roger Rudbeck in marital Upper Gull Lake property worth $50,000 had been forged. Carol denied signing the instrument and a questioned document examiner (handwriting expert) testified the signature on the document was a tracing. John offered no evidence which would refute the expert's conclusions. At his deposition, John was given notice that a handwriting expert could possibly be called at trial.

## IV

The trial court found a net marital estate of $205,885, which was divided by awarding $103,000 to Carol and $102,885 to John. Non-marital assets worth $113,061 consisted of all property held by John prior to the marriage which had not been subsequently sold. John argues an equal division of the marital estate is unfair because the marriage lasted only eight years. He also claims several pieces of property classified as marital property were purchased with funds directly traceable from the proceeds of non-marital property.

Marital property is defined as "[a]ll property acquired by either spouse subsequent to the marriage * * * regardless of whether title is held individually or by the spouses in a form of co-ownership such as joint tenancy, tenancy in common, tenancy by the entirety, or community property." Minn.Stat. § 518.54, subd. 5 (1982). This presumption is overcome by showing that the property in question is non-marital property. *Id.* Non-marital property is defined as:

> property real or personal, acquired by either spouse before, during, or after the existence of their marriage, which
>
> (a) is acquired as a gift, bequest, devise or inheritance made by a third party to one but not to the other spouse;
>
> (b) is acquired before the marriage;
>
> (c) is acquired in exchange for or is the increase in value of property which is described in clauses (a), (b), (d), and (e);
>
> (d) is acquired by a spouse after a decree of legal separation; or

(e) is excluded by a valid antenuptial contract.

*Id.* The trial court is accorded broad discretion in dividing the marital property of the parties. *Bogen v. Bogen*, 261 N.W.2d 606, 609 (Minn.1977); *Mentzos v. Mentzos*, 353 N.W.2d 683, 684 (Minn.Ct.App.1984). An equal division is not required. *Ruzic v. Ruzic*, 281 N.W.2d 502, 505 (Minn.1979). In making a just and equitable division of marital property, the trial court is to consider all relevant factors including those listed in Minn.Stat. § 518.58 (1982). On review, a trial court's division cannot be set aside unless it is clearly an abuse of discretion. *Taylor v. Taylor*, 329 N.W.2d 795, 797 (Minn.1983).

Under the facts of this case, it can not be said that the trial court abused its discretion in dividing the marital property evenly. Although the parties were only married for approximately 8 years and lived together for only 6½ of those years, it is "conclusively presumed that each spouse made a substantial contribution to the acquisition of income and property while they were living together as husband and wife." Minn.Stat. § 518.58 (1982).

As to the trial court's classification of property as non-marital versus marital, there was no abuse of discretion. The proceeds from the sale of John's non-marital property and proceeds of bank loans, proceeds of Contract for Deed payments, odd job wages, and proceeds from the sale of personal property were deposited in the same general checking account. This account was then used to purchase new assets, purchase building materials, pay living expenses, and pay for personal trips and purchases. These assets placed therein cannot be traced to any other assets because John did not segregate monies received from the sale of non-marital property from marital property. All money from all sources travelled through one savings and checking account. The presumption that property acquired during the marriage is marital controls. The trial court's findings are not an abuse of discretion.

## V

The trial court ordered John to pay maintenance in the amount of $500 per month for 24 months because Carol has little prospect of earning a living as a clerk. Carol now wishes to become a cosmetologist.

A trial court may grant maintenance if it finds that the spouse seeking maintenance:

(a) Lacks sufficient property, including marital property apportioned to him, to provide for his reasonable needs, especially during a period of training or education, and

(b) Is unable to adequately support himself after considering all relevant circumstances through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

Minn.Stat. § 518.552, subd. 1 (1982). The legislature has listed seven factors which shall be taken into consideration. *See* Minn.Stat. § 518.552, subd. 2 (1982). John has not shown that the trial court abused its discretion. The maintenance order will provide a transition period for job training and education. Carol is currently earning only $4.00 per hour while John earns income from a variety of sources, is able to support himself and is able to pay spousal maintenance. It was reasonable for the court to award temporary maintenance.

## VI

The trial court ordered John to contribute $4,000 to Carol's attorney's fees. A court may award attorney's fees in dissolution cases "to enable the other spouse to carry on or to contest the proceeding * *." Minn.Stat. § 518.14 (1982). An award of fees rests almost entirely in the discretion of the trial court and should not be disturbed absent clear abuse of discretion. *Kirby v. Kirby*, 348 N.W.2d 392, 394 (Minn. Ct.App.1984). Given the facts of this case, the award was reasonable.

**DECISION**

John has not met his burden of proving that the trial court abused its discretion in any of the matters raised.

Affirmed.