**In re the Marriage of Marilyn M. CHRISTENSEN, Petitioner, Respondent,**

**v.**

**Curtis M. CHRISTENSEN, Appellant.**

**No. C1-86-22.**

Court of Appeals of Minnesota.

Sept. 16, 1986.

Patrick J. Leary, Marshall, for respondent.

Diane A. Kotula, Jerome S. Rice, Minneapolis, for appellant.

Heard, considered and decided by PARKER, P.J., and WOZNIAK and SEDGWICK, JJ.

## OPINION

PARKER, Judge.

The Christensens' antenuptial agreement was never formally introduced into evidence. Consequently, it was impossible for the trial court, as it now is for this court, to make a determination based on an analysis of the actual document itself. Appellant's knowledge of his assets was deficient to the degree that the trial court had little help from his testimony in arriving at a final distribution of assets. Appellant makes numerous references to an apparent trial court memorandum, which remains unsigned and is therefore not properly before this court. The subject matter of the memorandum is thus excluded from the decision-making process of this court.

## FACTS

Curtis M. Christensen and Marilyn M. Biesemeier were married on February 14, 1975. Both parties had been previously married and divorced. An antenuptial agreement was executed seven days prior to their marriage. The agreement was signed in appellant's attorney's office without independent legal advice for respondent. In early 1985 respondent commenced an action to dissolve the marriage, citing an irretrievable breakdown of the marital relationship.

Appellant had lost a good deal of property as a result of his first divorce. He and his first wife, Audrey, had children during their marriage. Therefore, appellant was anxious to have an antenuptial agreement with respondent to protect his remaining property for his children. The terms of the agreement would result in the nonmarital property remaining in the name of the original owner.

At the time of her marriage to appellant, respondent was 33 years old and had graduated from high school, with some higher education. Throughout her career, she had been employed as a clerk-typist, private secretary, decorator, and later a bookkeeper. Respondent had two children from her first marriage and had some familiarity

with questions of custody and child support prior to the time of her marriage to appellant.

In the course of the trial proceedings, respondent admitted the following:

1. She was not coerced into signing the antenuptial agreement.
2. She did not request to have the agreement examined by her own attorney.
3. She read the document before signing it.
4. She understood the terms of the agreement.
5. She understood she would have no right to appellant's property.
6. The agreement did not take advantage of her.
7. There was no mention of her own assets in the agreement.

The only substantial asset which respondent brought into the marriage was a dwelling house in Tracy, Minnesota, rented to her parents. Appellant paid approximately $5,000 toward the house prior to the marriage. The couple lived at a lakeshore home for about ten years. Their mutual assets and earnings were kept in separate accounts. Respondent worked for a period of time as a bookkeeper at one of appellant's companies, G.M.A.

Appellant was responsible for the household bills. He also contributed to the support of respondent's two children, as the child support from their natural father did not suffice. Respondent was responsible for keeping a record of the family finances.

## ISSUES

1. Did the trial court give appropriate weight to the antenuptial agreement?

2. Was the trial court's distribution of property in accordance with the evidence before it?

## DISCUSSION

### I

Minnesota has favored antenuptial agreements governing disposition of the parties' estates upon death. *In re Appleby's Estate,* 100 Minn. 408, 111 N.W. 305 (1907); *In re Malchow's Estate,* 143 Minn. 53, 172 N.W. 915 (1919). In addition, the state gives weight to an antenuptial agreement governing property settlements upon dissolution. *Englund v. Englund,* 286 Minn. 227, 175 N.W.2d 461 (1970).

■ The current requirements for a valid antenuptial agreement are set forth in Minn.Stat. § 519.11 (1984), which states in pertinent part:

Subdivision 1. A man and woman of legal age may enter into an antenuptial contract or settlement prior to solemnization of marriage which shall be valid and enforceable if (a) there is a full and fair disclosure of the earnings and property of each party, and (b) the parties have had an opportunity to consult with legal counsel of their own choice. An antenuptial contract or settlement made in conformity with this section may determine what rights each party has in the nonmarital property * * * upon dissolution * * * and may bar each other of all rights in the respective estates not so secured to them by their agreement. This section shall not be construed to make invalid or unenforceable any antenuptial agreement or settlement made and executed in conformity with this section because the agreement or settlement covers or includes marital property, if the agreement or settlement would be valid and enforceable without regard to this section.

\*   \*   \*   \*   \*   \*

Subdivision 5. An antenuptial contract or settlement duly acknowledged and attested shall be prima facie proof of the matters acknowledged therein and as to those matters, the burden of proof shall be and rest upon the person contesting the same.

Since the Christensens' antenuptial agreement was executed before the enactment of the statute, it is governed by the common law. The common law differs from the statutory scheme with regard to which par-

ty has the burden of proving disclosure and opportunity to consult with counsel. *Hill v. Hill*, 356 N.W.2d 49, 53 (Minn.Ct.App. 1984), *pet. for rev. denied,* (Feb. 19, 1985).

■ Fraud is presumed under common law if the parties stand in a confidential relationship to one another and there is inadequate consideration to support their agreement. *Estate of Serbus v. Serbus,* 324 N.W.2d 381, 384 (Minn.1982); *Hill,* 356 N.W.2d at 53. The parties established a confidential relationship through their agreement to marry. *In re Malchow's Estate,* 143 Minn. at 59, 172 N.W. at 917. Because the antenuptial agreement was not entered into evidence, we do not know if the consideration to support the agreement was adequate. We cannot tell if there was a concealment of appellant's debt, as the apparent court memo cited by appellant is unsigned.

■ The trial court accorded limited weight to the antenuptial agreement because it was not offered and received into evidence; given the state of the record, we cannot hold this to be error.

## II

■ The trial court has broad discretion in the distribution of property in dissolution cases. *Mentzos v. Mentzos,* 353 N.W.2d 683, 684 (Minn.Ct.App.1984). On review, a trial court's division cannot be set aside unless it is clearly an abuse of discretion. *Taylor v. Taylor,* 329 N.W.2d 795, 797 (Minn.1983). The trial court should consider all factors that are relevant to the distribution, as well as those in Minn.Stat. § 518.58 (1982). *Rudbeck v. Rudbeck,* 365 N.W.2d 330, 334 (Minn.Ct.App.1985).

■ It appears from the trial court transcript and from the testimony of appellant that there was considerable commingling of marital and nonmarital property. Appellant's inability to give an accurate account of what property he owned prior to his second marriage and of what he now owns puts the trial court in a difficult position. The distribution of property by the trial court appears to be well within its discre-

tion, given the state of the evidence adduced before it.

## DECISION

Affirmed.