ANDERSON, Justice (dissenting).
I respectfully dissent from the court's opinion for two reasons. First, the court's opinion ignores the plain language of Minn. Stat. § 519.11, subd. 1 (2016), and reads our decision in McKee-Johnson v. Johnson , 444 N.W.2d 259 (Minn. 1989), too broadly. Second, even if I were to agree with the court's analysis of the law, I conclude that the court's application of our decision in In re Kinney , 733 N.W.2d 118 (Minn. 2007), is neither necessary nor wise. I would reverse the court of appeals but, at a minimum, I believe it more appropriate to remand the matter to the district court for application of the Kinney factors. I address each of my concerns in turn.
I.
The court's analysis is inconsistent with the plain language of section 519.11, subdivision 1. The court interprets the statute as providing a "procedural fairness 'safe harbor' for provisions purporting to distribute nonmarital property." In my view, the plain language clearly creates a procedural fairness safe harbor for all antenuptial agreements-those dividing all types of property, both marital and nonmarital. I come to that conclusion because that is what the statute says. Moreover, the court's reading of our decision in McKee-Johnson strays far beyond the main question answered in that case. My analysis, however, turns on the plain language of the statute.
The "goal of all statutory interpretation is to ascertain and effectuate the intention of the legislature." Christianson v. Henke , 831 N.W.2d 532, 536 (Minn. 2013) (citation omitted) (internal quotation marks omitted). Our first step in statutory interpretation is to determine whether the statute is ambiguous. Larson v. State , 790 N.W.2d 700, 703 (Minn. 2010) (citation omitted) (internal quotation marks omitted). When the language of a statute is free from ambiguity, we apply the plain language and do not explore the "spirit or purpose" of the statute. Cocchiarella v. Driggs , 884 N.W.2d 621, 624 (Minn. 2016). A statute is ambiguous if its language is susceptible to *630 more than one reasonable interpretation. Binkley v. Allina Health Sys. , 877 N.W.2d 547, 550 (Minn. 2016). In determining whether a statute is ambiguous, we read the statute according to the plain and ordinary meaning of its words. Christianson , 831 N.W.2d at 536. Although there may well be other conceivable interpretations of the statute, I conclude there is only one reasonable interpretation.
Minnesota Statutes section 519.11, subdivision 1, provides:
A man and woman of legal age may enter into an antenuptial contract or settlement prior to solemnization of marriage which shall be valid and enforceable if (a) there is a full and fair disclosure of the earnings and property of each party, and (b) the parties have had an opportunity to consult with legal counsel of their own choice. An antenuptial contract or settlement made in conformity with this section may determine what rights each party has in the nonmarital property, defined in section 518.003, subdivision 3b, upon dissolution of marriage, legal separation or after its termination by death and may bar each other of all rights in the respective estates not so secured to them by their agreement. This section shall not be construed to make invalid or unenforceable any antenuptial agreement or settlement made and executed in conformity with this section because the agreement or settlement covers or includes marital property, if the agreement or settlement would be valid and enforceable without regard to this section.
The first sentence of the statute sets forth two clear requirements for "an antenuptial contract" to "be valid and enforceable:" (1) there must be "full and fair disclosure" of each party's assets and income and (2) each party must have had an opportunity to consult with counsel of their choice. Id. This language unambiguously applies to all antenuptial agreements. There is no indication in this sentence that the statute is limited to only agreements or provisions within agreements that address nonmarital property.
The second sentence of section 519.11, subdivision 1, allows antenuptial agreements to determine the rights of the parties in nonmarital property, as defined in Minn. Stat. § 518.003, subd. 3b (2016). The court reads the second sentence as indicating that section 519.11 does not apply to provisions in antenuptial agreements purporting to dispose of marital property. The court overlooks what section 518.003 defines as nonmarital property: " 'Nonmarital property' means property real or personal, acquired by either spouse before, during, or after the existence of their marriage , which ... (e) is excluded by a valid antenuptial contract ." Minn. Stat. § 518.003, subd. 3b (emphasis added).
This statutory provision, section 518.003, subdivision 3b(e), clearly states that property acquired after marriage, which would otherwise be marital property, may be defined as nonmarital property when it is "excluded by a valid antenuptial contract." Since the original enactment of section 519.11, subdivision 1, the plain language of the second sentence, when read in conjunction with section 518.003, subdivision 3b, has contemplated that antenuptial agreements can address marital property. See Minn. Stat. § 519.11, subd. 1 (Supp. 1979); Minn. Stat. § 518.54, subd. 5 (1978).
Parties seeking to limit the rights to share in marital property need only properly exclude that property in a "valid antenuptial contract." Minn. Stat. § 518.003, subd. 3b(e). By the operation of the statute, that marital property becomes nonmarital property. The court's decision makes the language in section 518.003, subdivision 3b(e), and in *631 section 519.11, subdivision 1, mere surplusage. See Baker v. Ploetz , 616 N.W.2d 263, 269 (Minn. 2000) ("A statute should be interpreted, whenever possible, to give effect to all of its provisions, and no word, phrase, or sentence should be deemed superfluous, void, or insignificant." (citation omitted) (internal quotation marks omitted)). Rather than an unequivocal statement that section 519.11, subdivision 1, addresses nonmarital property, the second sentence explicitly allows a party to distribute marital property by defining it as nonmarital property.[1]
The third sentence of section 519.11, subdivision 1, provides that antenuptial agreements can still be valid and enforceable even if they do not meet the safe-harbor requirements found in the first sentence of the statute. The court reads the third sentence as another indication that section 519.11, subdivision 1, does not provide a procedural safe harbor for provisions that purport to distribute marital property. I do not agree.
As the dissent in the court of appeals opinion noted, the third sentence is a savings clause and it unambiguously applies to all antenuptial agreements. Section 519.11, subdivision 1, "shall not be construed to make invalid or unenforceable any antenuptial agreement ... made and executed in conformity with this section because the agreement ... covers or includes marital property, if the agreement or settlement would be valid and enforceable without regard to this section." Id. (emphasis added). This third sentence preserves the possibility that an antenuptial agreement can still be valid and enforceable under the common law even if it does not meet the safe-harbor requirements. Contrary to the court's decision, the sentence does not indicate that only provisions purporting to distribute nonmarital property are subject to the procedural requirements of the statute. The court converts a savings clause that explicitly applies to "any antenuptial agreement," Minn. Stat. § 519.11, subd. 1 (emphasis added), into one that applies only to "provisions purporting to distribute nonmarital property." We construe statutes to give effect to all of their provisions and to avoid surplusage. See Cocchiarella , 884 N.W.2d at 631. We do not "make, amend, or change the statutory law, but only ... apply it." State v. Haywood , 886 N.W.2d 485, 491 (Minn. 2016).
Additionally, the court reads our decision in McKee-Johnson too broadly. The court reads McKee-Johnson as having already determined the issues before us. But this case presents a different question than was presented in McKee-Johnson . See 444 N.W.2d at 265. Here, we are faced with the question of what standard for procedural fairness applies to provisions in antenuptial agreements that purport to distribute marital property. We did not decide that question in McKee-Johnson . In McKee-Johnson , we explained that section 519.11, subdivision 1, did not void antenuptial agreements simply because those agreements included provisions that purport to distribute marital property. 444 N.W.2d at 264. More precisely, we reversed the court of appeals because it voided an antenuptial agreement on the ground that section 519.11, subdivision 1, was hostile to agreements addressing marital property. See id. at 262-65. The holding in McKee-Johnson is narrow and must be read unnaturally broadly to carry the load the court assigns to it today. I would give McKee-Johnson precisely the reading *632 it deserves: it addresses only the question it expressly answers.
In sum, section 519.11, subdivision 1, provides a universal safe harbor for all antenuptial agreements because the plain language of the statute, clearly and unambiguously, so states. Courts must look to the common law only when an agreement that includes provisions that purport to distribute marital property fails to conform to the procedural fairness requirements of section 519.11, subdivision 1.
Not only does the court's decision effectively amend the statute, but also it undermines the reason it was adopted in the first place. There is little point to an antenuptial agreement that distributes nonmarital property because nonmarital property is subject to distribution at dissolution only in exceptional cases. See Minn. Stat. § 518.58, subd. 2. The court's decision leaves section 519.11, subdivision 1, with little purpose.[2]
II.
Because I conclude that the statute applies here and the agreement meets the requirements of the statute, I would reverse the court of appeals. But even if I were to agree with the court's approach, I would not independently evaluate the agreement under the common-law multi-factor test from In re Kinney , 733 N.W.2d at 124, and would instead remand to the district court for further proceedings. In Kinney , we stated that
under [the] common law, when a confidential or fiduciary relationship between the parties exists, courts should determine whether the antenuptial agreement was "equitably and fairly made" by considering (1) whether there was fair and full disclosure of the parties' assets; (2) whether the agreement was supported by adequate consideration; (3) whether both parties had knowledge of the material particulars of the agreement and of how those provisions impacted the parties' rights in the absence of the agreement; and (4) whether the agreement was procured by an abuse of fiduciary relations, undue influence, or duress.... [T]he opportunity to consult with independent counsel is a relevant factor in the analysis.... But ... we find no indication that such an opportunity is a requirement for a valid antenuptial agreement under [the] common law.
Id.
Assuming the four-factor test from Kinney applies here, I would remand this case to the district court. In the order invalidating the agreement, the district court concluded that Kinney did not apply because Kinney was decided "under the common law and not the current statutory scheme." The district court, therefore, did not make factual findings specific to the common-law factors we laid out Kinney .
*633 The court holds that the antenuptial agreement here is invalid because the agreement was not supported by adequate consideration and was a product of duress. Those conclusions are at best premature and are likely legally erroneous. When the consideration for an antenuptial agreement is inadequate, we have long required full and fair disclosure of the assets and financial position of the proponent of the agreement. See In re Malchow's Estate , 143 Minn. 53, 172 N.W. 915, 916 (1919). Inadequate consideration does not invalidate an antenuptial agreement; it merely shifts the burden of proving validity. As we stated in In re Estate of Serbus , 324 N.W.2d 381, 385 (Minn. 1982) :
The party giving up an interest is placing trust in the other party and expecting him or her not to abuse that trust. Since it would be easy for the person retaining the greater interest to abuse the trust placed in him, we require that person to prove he has provided the other with full and fair information before entering into the antenuptial contract.
There was full and fair disclosure of the financial positions of both spouses here and that point is not disputed. The court's reliance on this factor is misplaced.
Further, there is no explicit finding by the district court of duress. The district court found that Robbie intended to create that effect. But the district court did not find that Michelle's will was actually overborne by the circumstances Robbie created. Rather, the district court found that Michelle did not have "an adequate opportunity to negotiate any of the terms of the ... agreement." Unlike in Kinney , where one spouse testified to feeling coerced, 733 N.W.2d at 120-21, the district court did not find that Robbie actually coerced Michelle into signing the agreement. Assuming that the common-law factors from Kinney apply here, I would remand this case to the district court to make factual findings under the common-law standard in the first instance.
For the foregoing reasons, I respectfully dissent.

Additionally, under the statutory scheme, nonmarital property that would ordinarily be distributed to avoid undue hardship to one spouse is not subject to such distribution when a valid antenuptial agreement excludes it. See Minn. Stat. § 518.58, subd. 2 (2016).

The court contends that my analysis relies exclusively on the first sentence of section 519.11, subdivision 1. In fact, my analysis relies on a reading of the subdivision as a whole and the statute it references. The court also claims that my analysis is circular because marital property becomes nonmarital property under section 518.003, subdivision 3b(e), only by operation of "valid antenuptial contract[s]," and this agreement was invalid under the statute and the common law. That is, however, a non sequitur. I do not argue that the validity of the agreement here depends on the operation of section 518.003, subdivision 3b(e). The validity of the agreement here does not affect the meaning of the statute. The court further asserts that my analysis is "inconsistent with our binding precedent." But the court's reading of McKee-Johnson conjures binding precedent from dicta and I have been clear that, to the extent the court is correct, I would overrule McKee-Johnson in part.